## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JARROD LOWREY,

      **Plaintiff,**

    **vs.**                                             **Civ. No. 25-849  JFR/LF**

CITY OF RIO RANCHO,
RIO RANCHO PUBLIC SCHOOLS,
RIO RANCHO POLICE DEPARTMENT,
CONNIE PETERSON, in her official and individual capacities,
LORENZO GREEN, in his official and individual capacities,
NOAH TRUJILLO, in his official and individual capacities,
BRANDON MAEZ, in his official and individual capacities,
ELLIANA LURY, in her official and individual capacities,
MATT GEISEL, in his official and individual capacities,
JOSH RUBIN, in his official and individual capacities,
LAWRENCE SAMUEL, in his official and individual capacities,
MIKE McDERMOTT, in his private capacity as 3rd party conspirator,
TORENZO JOHNSON, in his private capacity as 3rd party conspirator,
STEPHEN SMITH, in his private capacity as 3rd party conspirator,
THERESA SMITH, in her private capacity as 3rd party conspirator,
MELISSA MONTOYA, in her private capacity as 3rd party conspirator,
ANA KUNY SLOCK, in her private capacity as 3rd party conspirator,
RAQUEL DeTOMASSO, in her private capacity as 3rd party conspirator,
BIANCA FISHER, in her private capacity as 3rd party conspirator,
MICHAEL FISHER, in his private capacity as 3rd party conspirator,
BOBBIE MARTINEZ, in her private capacity as 3rd party conspirator,

      **Defendants.**

### MEMORANDUM OPINION AND ORDER[1]

      **THIS MATTER** is before the Court on Defendants Rio Rancho Public Schools and

Bobbie Martinez's Motion to Dismiss Complaint ("Motion"), filed September 5, 2025.  Doc. 9.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  Doc. 37.

On September 22, 2025, Plaintiff filed a Limited Response.[2][3][4]  Doc. 22.  On October 6, 2025,

Defendants filed a Reply.  Doc. 42.  On October 7, 2025, Defendants filed a Notice of

Completion of Briefing.  Doc. 47.

## I.  PROCEDURAL BACKGROUND

On July 28, 2025, Plaintiff filed a Complaint in the Thirteenth Judicial District Court,

County of Sandoval, State of New Mexico, against the City of Rio Rancho, Rio Rancho Public

Schools ("RRPS"), Rio Rancho Police Department ("RRPD"), and eighteen individuals in their

official, individual, and/or private third-party conspirator capacities.  Doc. 6 at 1-19.  On

August 29, 2025, it was removed to this Court based on Plaintiff's alleged violations of federal

---

[2] Plaintiff provided what he characterizes is a "limited response" and in so doing argues, without any legal support, that pending rulings on his *Emergency Motion to Remand* and *Motion to Disqualify City Attorney From Representing Individual Defendants In Their Personal Capacities* that this Court's jurisdiction is not established and that a ruling on Defendants' Motion is premature and contrary to federal law.  Plaintiff is mistaken.  Removal divests the state court of its jurisdiction, and the federal court acquires full and exclusive jurisdiction over the case as though it had been originally commenced in the federal court.  *Bruley v. Lincoln Property Co., N.C., Inc.,* 140 F.R.D. 452 (D. Colo., 1991) (Removal of a state action to federal court immediately divests state court of jurisdiction) (citing 28 U.S.C. § 1446)).  Thus, by operation of law, all motions pending in state court at the time of removal remain pending as if they had been filed in federal court.  *See In re Montgomery Mall Ltd. P'ship*, 704 F.2d 1173, 1176 (10th Cir. 1983) (string citation omitted) (explaining that it is well settled that "motions pending in state court survive removal to federal court.").  While pleadings from *pro se* litigants are construed liberally, *pro se* litigants are obligated to comply with the rules of civil procedure.  *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994).  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) ("liberal treatment [for *pro se* litigants] is not without limits, and this court has repeatedly insisted that *pro se* parties follow the same rules of procedure that govern other litigants." (internal quotation marks omitted); *Keeher v. Dunn*, 409 F. Supp. 2d 1266, 1270 (D. Kan. 2005) ("plaintiffs are not excused from compliance with fundamental rules of procedure because they are proceeding *pro se*.  *Pro se* litigants must follow rules of procedures, including local rules.").  Compliance with the rules of civil procedure, therefore, is not at Plaintiff's discretion and the Court will not allow Plaintiff to ignore them.  In accordance with this Court's Local Rules, Plaintiff's Response was due within fourteen (14) calendar days after service of the motion.  D.N.M.LR-Civ. 7.4(a).  Additionally, "[t]he failure of a party to file and serve a response in support of a motion within the time prescribed for doing so constitutes consent to grant the motion."  D.N.M.LR-Civ. 7.1(b).

[3] Although no meaningful response has been filed, the court must be satisfied a basis for dismissal exists.  *See Fournerat v. Wisconsin Law Review*, 420 Fed. Appx 816, 819 (10th Cir. 2011) ("Under Tenth Circuit precedent, however, 'a district court may not grant a motion to dismiss for failure to state a claim merely because a party failed to file a response.' ") (quoting *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003)).

[4] On December 24, 2025 - *ninety-three days after* Plaintiff filed his Limited Response, *seventy-eight days after* the Notice of Completion of Briefing (Doc. 47) was filed, *forty-nine days after* the Court denied Plaintiff's Emergency Motion to Remand (Doc. 48), and *without permission of the Court* - Plaintiff filed a "full" Response to Defendants' Motion to Dismiss.  Doc. 61.  On January 7, 2026, Defendants filed a Motion to Strike Plaintiff's Response as untimely.  Doc. 65.  By separate order, the Court granted Defendants' Motion to Strike.

statutes and the United States Constitution over which this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Doc. 1.

Relevant to the Motion before the Court, Plaintiff's Complaint brings two counts against Defendant RRPS[5]: Count I Violation of the Individuals With Disabilities Education Act ("IDEA") and Count II Disparate Impact Discrimination pursuant to the New Mexico Human Rights Act ("NMHRA").  Doc. 6 at 4-7.  Plaintiff's Complaint brings seven counts against Defendant Bobbie Martinez:  Count VII Violation of Free Speech Rights – 42 U.S.C. § 1983 (Private Actor); Count VIII Retaliation for Protected Speech - 42 U.S.C. § 1983 (Private Actor); Count IX Conspiracy to Violate Plaintiff's Free Speech Rights - 42 U.S.C. § 1983 (Private Actor); Count XI – Civil Conspiracy to Violate Plaintiff's Free Speech Rights (Common Law Civil Conspiracy) (Private Capacity); Count XV Violation of Equal Protection on the Basis of Race - 42 U.S.C. § 1983 (Private Actor); Count XVIII – Intentional Infliction of Emotional Distress (Common Law) (Private Capacity); and Count XIX Defamation (Common Law) (Private Capacity).  Doc. 6 at 11-14, 16, 18-19.

## II.  LEGAL STANDARDS

### A.    Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides that a party may assert by motion the defense of failure to state a claim upon which relief can be granted.  In deciding a motion to dismiss premised on Rule 12(b)(6), the Court accepts the factual allegations in the complaint as true and views them in the light most favorable to the plaintiff.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  While the facts in the complaint need not be detailed, they must be sufficient to allow

---

[5] Defendants note that Rio Rancho Public Schools is not a proper party to this lawsuit and that suits against schools and/or school districts are properly brought against the local school board.  Doc. 9 at 1, fn 1.

the Court to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration, internal quotation marks, and citation omitted). Indeed, "[c]onclusory allegations are not entitled to the assumption of truth." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted). A court will not construe a plaintiff's pleadings "so liberally that it becomes his advocate." *Bragg v. Chavez*, 2007 WL 5232464, at *25 (D.N.M. Aug, 2, 2007).

In deciding a motion to dismiss challenging the legal sufficiency of a complaint, the Court generally must exclude extraneous material or convert the motion to one for summary judgment. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017). "A district court may, however, consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents'

authenticity." *Id.* (internal quotation marks and citation omitted).  Moreover, the Court may take judicial notice of its own files and records in deciding this type of motion.  *Tellalabs, Inc. v. Makor Issues & Rts.*, 551 U.S. 308, 322 (2007); *see Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006).  Judicial notice of court filings is particularly helpful in situations where a motion to dismiss invokes preclusion doctrines.  *See, e.g.*, *Nichols v. Danley*, 266 F. Supp. 2d 1310, 1312 (D.N.M. 2003).

      **B.**        **Plaintiff's *Pro Se* Status**

Plaintiff's filings were prepared without the assistance of counsel.  Although Plaintiff must nevertheless comply with the fundamental rules of procedure, *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994), it has long been the rule that pro se pleadings are construed with a greater degree of liberality than those of a trained attorney, *Hall*, 935 F.2d at 1110 & n.3 (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).  This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction.  *Id.* at 1110.  However, it is inappropriate for a court to assume the role of an advocate and read into a complaint for facts or legal theories that are simply not present there. *Id.*; *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("[T]he court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues.").

The burden is on the plaintiff to frame a complaint that contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 663, 678 (quoting *Twombly*, 550 U.S. at 570).  A court cannot assume facts or make connections on a pro se plaintiff's behalf because he "requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine

whether he makes out a claim on which relief can be granted." *Hall*, 935 F.2d at 1110; *but see Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) ("Dismissal of a *pro se* complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.") (citation modified).

### C.    Supplemental Jurisdiction

Some of the claims asserted in Plaintiff's Complaint arise under federal law, while others arise under state law. As diversity of citizenship is not alleged in this case, Plaintiff's state-law claims are before this Court only by virtue of the supplemental jurisdiction conferred by 28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367](a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Before doing so, however, the Court must consider whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction over the state-law claims. *See Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995). In this case the Court concludes that these factors weigh in favor of retaining jurisdiction because Plaintiff's state-law claims are closely intertwined with his federal claims, rely on the same set of facts, and are subject to disposition based on clearly established law. Hence, the Court elects to exercise supplemental jurisdiction over Plaintiff's state-law claims and resolve all of the claims addressed in Defendants' Motion.

### III.  ALLEGED FACTS

Plaintiff's Complaint contains the following allegations.

In 2024-2025 Plaintiff's son was enrolled at Enchanted Hills Elementary School in Rio Rancho, New Mexico, and subject to a Behavior Intervention Plan ("BIP") based on

Attention Deficit Hyperactivity Disorder ("ADHD").  Doc. 6 at 3,  ¶¶ 132-37.  Plaintiff saw an advertisement in the school's email system for "4th Grade Basketball Program." *Id.* at 3, 4-5, ¶¶ 77, 145-51.  Plaintiff reached out to the City of Rio Rancho's Youth Basketball Director Lorenzo Green to inquire about rules for signing up his son in the basketball program and did so shortly thereafter.  *Id.* at 3, ¶¶ 78-79.  Plaintiff's son was "unfairly" placed on a "B" team.  *Id.* at 3 at ¶ 80.  Plaintiff volunteered as an assistant coach at the beginning of the season.  *Id.* at 3, ¶ 81.  Plaintiff became concerned about the "discriminatory nature" of the league and was "openly critical" of the league to league administrators.  *Id.* at ¶¶ 82-83.  Director Green did not allow Plaintiff to coach his son's team.  *Id.* at ¶ 84.  Plaintiff's son's team lost their first game 46-2 against "a hand-picked all-star team which broke league rules."  *Id.* at ¶ 85.

In December 2024, Plaintiff met with Vice Principal Steven Herrera of Enchanted Hills Elementary regarding his concerns of discrimination by the basketball league and Plaintiff was told that the school was not involved in the City's youth basketball league.  *Id.* at 3 at ¶ 89, 5 at ¶¶ 160-64.  Plaintiff also attempted to contact Defendant RRPS Superintendent's Office and Athletic Director Todd Resch and received no response.  *Id.* at ¶¶ 165-68.  On January 8, 2025, Plaintiff filed a complaint against the basketball league administrators with the City of Rio Rancho.  *Id.* at ¶ 86.  On January 14, 2025, Plaintiff filed a Writ of Mandamus in the Second Judicial District Court accusing the City of Rio Rancho of misconduct and alleging the Cleveland Storm team of cheating.[6]  *Id.* at ¶ 87.

---

[6] Plaintiff filed an *Emergency Petition For Writ of Mandamus* filed in the State of New Mexico, County of Bernalillo, Second Judicial District Court, Case No. D-202-CV-2025-00350.  On January 24, 2025, the Second Judicial District Court denied and dismissed Plaintiff's *Emergency Petition for Writ of Mandamus* on the basis of improper venue.  On June 30, 2025, the Court of Appeals for New Mexico affirmed the district court's dismissal.  *See St. Louis Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that federal courts may take notice of proceedings in other courts, both within and outside of the federal judicial system).

7

Defendants, both state and private actors, began conspiring against Plaintiff by soliciting and making "false accusations" about Plaintiff. *Id.* at ¶¶ 90-95. Defendants created a "false hoax that, because of Plaintiff's white minority race, he was acting and threatening other black and Latino league coaches, parents, and players, primarily on the Storm team." *Id.* On February 15, 2025, after Plaintiff's attendance of two league games, Defendants conspired to accuse Plaintiff of the "false race hate crime hoax." *Id.* After basketball games on February 15, 2025, Defendants Connie Peterson[7] and Noah Trujillo[8] solicited emails and texts from individual Defendants to form a pretext to remove Plaintiff and his son from the basketball league. *Id.* at ¶¶ 96-97. On February 17, 2025, Defendant Mike McDermott[9] sent Plaintiff a text banning him from the McDermott Athletic Center ("MAC") based on Plaintiff's alleged misconduct at league games.[10] *Id.* at ¶¶ 98, 114-15. On February 18, 2025, Defendants Peterson and Trujillo met with Defendants Matt Geisel[11] and Josh Rubin[12] to discuss banning Plaintiff from league practices and from the MAC and to discuss employing Defendant Lawrence Samuel to open a criminal investigation of Plaintiff "in order to silence his public criticisms." *Id.* at ¶¶ 99-102, 105-07. Defendant Samuel recorded the meeting on his lapel camera. *Id.* at ¶¶ 103-04. On February 18,

---

[7] Connie Peterson is identified as the City of Rio Rancho's Parks and Recreation Director. Doc. 6 at 2.

[8] Noah Trujillo is identified as the City of Rio Rancho's Parks and Recreation Deputy Director. Doc. 6 at 2.

[9] Mike McDermott is identified as the Director of McDermott Athletic Center ("MAC"). Doc. 6 at 2.

[10] Plaintiff alleges that the MAC is a city-owned facility. Doc. 6 at 3, ¶¶ 111-12. Plaintiff is incorrect. *See* *https://www.themacsports.com/about* (describing MAC as family-owned and operated since 2016). A court "is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006) (quotation omitted).

[11] Matt Geisel is identified as the City of Rio Rancho's City Manager. Doc. 6 at 2.

[12] John Rubin is identified as the City of Rio Rancho's City Attorney. Doc. 6 at 2.

2025, Defendant Torenzo Johnson[13] sent an email to Defendant McDermott about the "fake incident" that occurred at the league games on February 15, 2025. *Id.* at ¶¶ 108-109. Defendant Samuel contacted Plaintiff and "warned him of further participation at league games and practices." *Id.* at ¶ 110. On February 19, 2025, Defendant Samuel "trespassed Plaintiff" at the MAC based on Defendant McDermott falsely reporting Plaintiff's misconduct at leagues games and also at the MAC. *Id.* at 3-4, ¶¶ 111-15. Plaintiff and his son were effectively banned from league participation when Plaintiff was banned from the MAC. *Id.* at 4, ¶ 117.

Defendant Samuel cleared Plaintiff of any wrongdoing. *Id.* at ¶ 118. Plaintiff requested public documents. *Id.* at ¶ 119. On May 22, 2025, Plaintiff filed more complaints against the league administrators with the City of Rio Rancho with no response. *Id.* at ¶ 120. Plaintiff filed multiple requests for action to be taken by the City of Rio Rancho with no response. *Id.* at ¶ 121. Plaintiff sent settlement demand letters to the City of Rio Rancho and Defendant RRPS with no response. *Id.* at ¶ 122-23. Defendant RRPD denied any involvement in the events described. *Id.* at ¶ 123. On June 16, 2025, Plaintiff sent a notice of his lawsuit notice via email to all of the individual Defendants with no response. *Id.* at ¶ 124.

## IV.  ARGUMENTS AND ANALYSIS

### A.      Plaintiff's Claims Against Defendant RRPS

#### 1.      Count I – Violation of IDEA

Plaintiff's son is diagnosed with ADHD and is eligible for special education and related services under the Individual with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Doc. 6 at

---

[13] Torenzo Johnson is identified as a Head Coach of the Visa Grande Fourth Grade Youth Basketball Team. Doc. 6 at 2.

4, ¶¶ 132-37.  Plaintiff's son is subject to a Behavior Intervention Plan ("BIP").[14]  *Id.*  Plaintiff alleges that pursuant to IDEA's provisions and relevant regulations, Defendant RRPS has a duty to provide accommodation and ensure equal access to both academic and nonacademic programming for eligible students and is mandated to ensure that children with disabilities have equal access to extracurricular activities, including recreational athletics.  *Id.* at ¶¶ 172-74 (citing 34 C.F.R. § 300.107(a)).[15]  Plaintiff argues that because Defendant RRPS provided access to its school facilities for the City's youth basketball league pursuant to a Facility Use Agreement, and because Defendant RRPS promoted the City's youth basketball league through the school communication channels, that Defendant RRPS's duties of accommodation and protection to eligible students under IDEA extended to his son's extracurricular participation in the City's youth basketball league.  *Id.* at 4-5, ¶¶ 138-155.  Relying on this premise, Plaintiff argues that Defendant RRPS should have but failed to provide any accommodation to ensure his son's equal opportunity for fair participation in the youth basketball league and should have but failed to provide protection to his son by not intervening in the league's unfair practices.  *Id.* at 5, ¶¶ 152-55.  Plaintiff argues that Defendant RRPS's failure to act prevented his son from having a meaningful educational opportunity and allowed his son "to be publicly excluded and humiliated" based on his disability.  *Id.* at ¶¶ 181-84.  Finally, Plaintiff argues that Defendant

---

[14] Broadly speaking, a "behavior intervention plan," or BIP, is a plan designed to implement the IDEA's requirement that an IEP team, "in the case of a child whose behavior impedes the child's learning or that of others, consider the use of positive behavioral interventions and supports, and other strategies, to address that behavior." 20 U.S.C. § 1414(d)(3)(B)(i); *see also Nathan M. by & through Amanda M. v. Harrison Sch. Dist. No. 2,* 942 F.3d 1034, 1038 (10th Cir. 2019).

[15] 34 C.F.R. § 300.107 provides that public agencies must take steps to provide nonacademic and extracurricular services and activities "in the manner necessary to afford children with disabilities an equal opportunity for participation in those services and activities."  In turn, 34 C.F.R. § 300.117 requires that disabled students can participate with nondisabled children in extracurricular services and activities "to the maximum extent appropriate to the needs of that child."  Section 300-117 further requires that public agencies ensure that every disabled child "has the supplementary aids and services determined by the child's IEP Team to be appropriate and necessary for the child to participate in nonacademic settings."

RRPS's "failed attempts" to redress his concerns demonstrate that Defendant RRPS disclaimed its responsibility and refused to intervene such that requiring him to exhaust administrative remedies would be futile. *Id.* at ¶¶ 169-71.

In its Motion, Defendant RRPS seeks dismissal of Plaintiff's IDEA claim on several grounds.

First, Defendant RRPS contends that Plaintiff is not a proper party because Plaintiff is not asserting claims on his son's behalf and Plaintiff himself is not subject to the IDEA. Doc. 9 at 8-9.

Second, Defendant RRPS contends that it did not oversee or operate the City's recreational basketball league in question and Plaintiff's Complaint has not alleged anything other than conclusory allegations in support of his position that it did. *Id.* at 10-11. For instance, Defendant RRPS contends that Plaintiff has failed to allege that the City's youth basketball league was a school-based program or in any way tied to educational programming at Enchanted Hills Elementary; that Defendant RRPS was aware that Plaintiff registered his son for the youth basketball league; or that Defendant RRPS was involved in the administration of the league or the formation of teams. *Id.* at 12. Defendant RRPS contends that while nonacademic and extracurricular services and activities may include athletics and recreational activities, the regulation upon which Plaintiff relies requires that nonacademic services must be determined appropriate and necessary by the child's IEP team. *Id.* 12-13 (citing 34 C.F.R. § 300.107). Here, Defendant RRPS contends that Plaintiff has failed to allege facts demonstrating his son's participation in the league was tied to his academic programming or that his son's IEP team determined that participation in the youth basketball league was appropriate and necessary such that Defendant RRPS was required to take steps to provide those services and activities. *Id.* at

13.   Additionally, Defendant RRPS contends that Plaintiff fails to allege what supplementary aids and services his son required to afford him an equal opportunity for participation in the youth basketball league.  *Id.*  Defendant RRPS also contends that Plaintiff has failed to allege facts demonstrating that his son's placement on the "B" team did not afford him equal access to participation in the league.  Doc. 9 at 12.

Defendant RRPS contends that if the Court were to find that Plaintiff has alleged facts sufficient to state a claim against Defendant RRPS for violation of IDEA, that Plaintiff's claims must still be dismissed because Plaintiff failed to exhaust his administrative remedies required under the IDEA.  Doc. 9 at 13-15.  Defendant RRPS contends that Plaintiff's Complaint fails to allege he engaged in even the most rudimentary attempt to exhaust his administrative remedies required, *i.e.,* meeting with his son's IEP Team, requesting and/or participating in a due process hearing, or alleging that exhaustion would fail to provide adequate relief or that the Rio Rancho School Board has adopted a policy or pursued a practice of general applicability contrary to law. *Id.*  Instead, Plaintiff alleges only that he met with the Enchanted Hills' vice principal, who denied Defendant RRPS's involvement in the basketball league, and that Plaintiff placed a few unreturned phone calls.  *Id.*  Defendant RRPS contends this is insufficient to demonstrate Plaintiff exhausted the administrative remedies required or that exhaustion would be futile or fail to provide adequate relief.  *Id.*

In Response, Plaintiff argues that Defendants' Motion relies on contested factual assertions outside the pleadings and ignores numerous factual allegations in the Complaint that must be accepted as true.[16]  Doc. 22 at 3.

---

[16] *See* fns. 2, 3, 4, *supra.*

In Reply, Defendants contend that Plaintiff's Response does not address any of the arguments raised in the Motion and that by failing to do so concedes that Plaintiff's claim for violation of the IDEA is invalid and should be dismissed.  Doc. 42 at 6.

**2.    IDEA Requires Exhaustion of Administrative Remedies Prior to Judicial Review[17]**

The IDEA offers States federal funds to assist in educating children with disabilities.  20 U.S.C. § 1400 *et seq; see Arlington Central School Dist. Bd. of Ed. v. Murphy*, 548 U.S. 291, 295 (2006).  In exchange for the funds, a State pledges to comply with a number of statutory conditions.  Among them, the State must provide a free appropriate public education – a FAPE, for short – to all eligible children.  20 U.S.C. § 1412(a)(1).  The IDEA places a variety of obligations on state and local education agencies.

As part of providing a FAPE, school districts receiving funds under the IDEA are required to establish an IEP for each child with a disability.  *Jacobs v. Salt Lake City School District*, 154 F.4th 790, 801 (10th Cir. 2025) (citing *Alex W. ex rel. Marlene W. and William W. v. Poudre Sch. Dist.* R-1, 94 F.4th 1176, 1180 (10th Cir. 2024) (explaining that at the "core" of the FAPE requirement is the jointly crafted IEP for each disabled student which is a "comprehensive plan" by which "special education and related services are 'tailored to the unique needs' of a particular child.") (citations omitted))).  The IEP must contain a written statement that is developed, reviewed, and revised that includes, *inter alia,* a specific statement of the child's current performance levels, the child's short-term and long-term goals, the educational and other

---

[17] Plaintiff's claim against Defendant RRPS is brought pursuant to IDEA and the Court concludes that dismissal is warranted based on Plaintiff's failure to exhaust administrative remedies.  The Court, therefore, does not reach Defendants' other asserted grounds for dismissal of Count I.

services to be provided, and the criteria for evaluating the child's progress.  *See* 20 U.S.C. § 1414(d)(1)(A); *see also* 34 C.F.R. § 300.320 (*Definition of individualized education program*).

When a child with a disability demonstrates behavior that impedes the child's learning or that of others, appropriate behavioral support may be necessary to ensure that the child receives FAPE.  The IEP team must consider and when determined necessary for ensuring FAPE, include or revise behavioral support in the child's IEP.  *See* 34 C.F.R. § 300.324(a)(2)(i).  Often this comes in the form of a BIP, but IDEA does not require specific programs or strategies so long as the IEP adequately identifies a student's behavioral impediments and implements strategies to address that behavior.  *See J.A. o/b/o G.A. v. Royal Oak School District*, 2025 WL 2541921, at *4 (E.D. Mich. Sept. 4, 2025) (citing *M.W. ex rel. S.W. v. New York City Dep't of Educ.,* 725 F.3d 131, 140 (2d Cir. 2013) (quoting 20 U.S.C. § 1414(d)(3)(B)(i))).

As a general matter, the IDEA requires the exhaustion of administrative remedies.  "As part of the bargain of providing children with educational rights and parents with procedural safeguards to protect those rights, Congress required that parents turn first to the [IDEA's] administrative framework to resolve any conflicts they had with the school's educational services." *Cudjoe ex rel. Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1064 (10th Cir. 2002).  Requiring administrative exhaustion of IDEA claims advances several objectives:

> (1)  permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

*Ass'n for Community Living v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993) (internal quotation marks omitted).

The administrative process is straightforward.  Section 1415 of the IDEA grants the right to present to the school district a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of [a child with a disability], or the provision of a free appropriate public education [FAPE] to such child."  20 U.S.C. § 1415(b)(6)(A).  In conjunction with the complaint the parents must provide the district with a notice that includes "a description of the nature of the problem of the child relating to such proposed initiation or change, including facts relating to such problem" and "a proposed resolution of the problem to the extent known and available to the parents at the time."  20 U.S.C. § 1415(b)(7)(A)(ii)(III), (IV).  The complaint, if not settled through mediation, *see* § 1415(e), or a preliminary meeting, *see* § 1415(f)(1)(B)(i), is resolved through an impartial due-process hearing, *see* § 1415(f)(1).  At the hearing the parties have "the right to present evidence and confront, cross-examiner, and compel the attendance of witnesses" 20 U.S.C. § 1415(h)(2).  The hearing officer must prepare findings of fact and a decision.  *See* § 1415(h)(4).  Either party may appeal the hearing officer's decision to the state educational agency, which reviews the findings and decision and "make[s] an independent decision upon completion of such review."  20 U.S.C. § 1415(g).  Only after the state agency has issued its decision may a party bring "a civil action with respect to the complaint" in state or federal court.  20 U.S.C. § 1415(i)(2)(A).

Here it is undisputed that Plaintiff has not exhausted the administrative remedies required under the IDEA prior to seeking judicial review of his alleged IDEA violation.  Plaintiff nonetheless argues that the Vice Principal Herrera's disclaimed involvement with the basketball youth program and the unreturned phone calls from the superintendent's office "confirm that school officials disclaimed responsibility and refused to intervene, supporting a finding that exhaustion would have been futile."  Doc. 6 at 5, ¶¶ 160-171.  The Court is not persuaded.

15

"[P]arents may bypass the administrative process where exhaustion would be futile or inadequate." *Honig v. Doe*, 484 U.S. 305, 327, 108 S.Ct. 592, 606; *see also Romer*, 992 F.2d at 1044. Another exception to IDEA's exhaustion requirement exists where "an agency has adopted a policy or pursued a practice of general applicability that is contrary to law." *Romer*, 992 F.2d at 1044. Administrative remedies are generally inadequate or futile where plaintiffs allege structural or systemic failure and seek systemwide reform. *Id.* (citation omitted). The same is true where plaintiffs assert violations of the IDEA's due process provisions. *Id.* A policy that is "contrary to law" may mean that exhaustion may be unnecessary if the alleged violations raise only questions of law, thereby rendering agency expertise and the factual development of an administrative record less important. *Id.* (citing *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1095 (1st Cir. 1989) (purposes of exhaustion doctrine not served when issue is "a pure matter of law")).

The Court concludes that this case does not fall within the exceptions to the exhaustion requirement. Here, construing Plaintiff's allegations liberally, Plaintiff alleges that because his son has ADHD and is subject to a BIP that Defendant RRPS had an obligation to provide his son with an equal opportunity to participate in extracurricular athletic activities, and that Defendant RRPS violated its obligations by failing to oversee and intervene on Plaintiff's son's behalf in the alleged "disability-based exclusion" practices of the City's youth basketball program. Plaintiff's allegations, however, do not target structural or due process concerns, nor do they challenge a policy of general applicability that is contrary to law, nor do they demonstrate that adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process. Instead, in the absence of any alleged facts to support that Plaintiff used or attempted to use the administrative process the

16

IDEA provides to challenge his son's IEP or its implementation that may or may not have included athletic activities determined to be appropriate to his needs,[18] Plaintiff relies on a formulaic recitation of regulatory requirements to nakedly allege that the City of Rio Rancho's mere use of Defendant RRPS's facilities for its basketball program superimposed regulatory compliance on Defendant RRPS over unsponsored athletic activities untethered to a child's IEP.[19]  Plaintiff then relies on his cursory and lukewarm inquiry into Defendant RRPS's involvement in the City's youth basketball program as grounds to relieve him of his statutory obligations to initiate and comply with the required process of exhausting his administrative remedies if he wishes to pursue rights under the IDEA.  Plaintiff's allegations and arguments are woefully insufficient to render the exhaustion requirement of the IDEA inadequate or futile.

In sum, Plaintiff may not bring any federal claims based upon alleged violation of the IDEA and avail himself of judicial review until he has exhausted his administrative remedies.

---

[18] *See* fn. 15, *supra*.

[19] Plaintiff also alleges that the City of Rio Rancho and Defendant RRPS "shares liability for discrimination" in a "jointly operated public school" pursuant to NMSA 1978, § 41-4-4(J).  This statute addresses the New Mexico Tort Claims Act and granting immunity from tort liability and authorizing exceptions to a governmental entity and any public employee while acting within the scope of duty.  Importantly, the statute defines a "jointly operated public school" as one that "is used or maintained pursuant to a joint powers agreement.  NMSA 1978, §§ 41–4–4(I) and (J). Plaintiff has not alleged facts that a joint powers agreement exists such that Section 41-4-4(J) applies to the circumstances of this case.

*See Gutierrez v. W. Las Vegas Sch. Dist.*, 2002-NMCA-068, ¶ 14, 132 N.M. 372, 374, 48 P.3d 761, 763, which provides:

> "Joint powers agreement" is a term of art in New Mexico. The Joint Powers Agreements Act, NMSA 1978, §§ 11–1–1 to 7 (1961, as amended through 1999), specifically grants authority under certain circumstances for "public agencies by agreement [to] jointly exercise any power common to the contracting parties." § 11–1–3. "Public agency" includes New Mexico educational institutions specified in N.M. Const. art. XII, § 11N.M. Const. art. XII, § 11, including UNM and New Mexico school districts. § 11–1–2(A). The legislative or other governing body of the public agencies must authorize any joint powers agreement, *see* § 11–1–3, which must "clearly specify the purpose of the agreement or for any power which is to be exercised." § 11–1–4(A). The "administering agency" chosen to "administer or execute the agreement" is to be considered as "an entity separate from the parties to such agreement." § 11–1–5(A), (B). Officers, agents, and employees of school districts retain whatever "immunities from liability" they otherwise may have. § 11–1–6.

He has not done so here.  The Court, therefore, finds Defendants' Motion is well taken and

**DISMISSES WITHOUT PREJUDICE** Count I of Plaintiff's Complaint.

### 2.  Count II - Disparate Impact Discrimination Pursuant to NMHRA

Plaintiff alleges in Count II of his Complaint that Defendant RRPS violated the

New Mexico Human Right Act ("NMHRA") because it failed to adopt equitable sports team

formation policies which had a disparate impact on Plaintiff's son and similarly situated children

throughout the league.  Doc. 6 at 6, ¶¶ 216-219.  Plaintiff argues that Defendant RRPS' practices

excluded his son and similarly-situated children from equal participation, denied competitive

opportunity, and subjected them to public embarrassment and stigma.  *Id.*  Plaintiff alleges he

exhausted "all claims through Claim #25-01-0021-E, and was denied Right to Sue Letter By

Agent Rick Lucas."[20]  *Id.* at 6, ¶¶ 228-29.  Plaintiff alleges he "declared his rights to file suit to

agent."  *Id.*

In its Motion, Defendant RRPS restates that Plaintiff has failed to allege particularized

facts showing that the youth basketball league was a school-based program, that Defendant

RRPS was involved in the administration of the league or the formation of the teams, that

Defendant RRPS entered into a joint powers agreement with the City of Rio Rancho related to

the youth basketball league, or that his son's placement (or that of any other child) on the "B"

team did not afford Plaintiff's son equal access to participation in the league.  Doc. 9 at 16-20.

Defendant RRPS also restates that Plaintiff has failed to allege facts demonstrating his son's

---

[20] Plaintiff cites Exhibits 22a-22c found on "Exhibit List A – (In support of complaint)."  Doc. 6 at 6, ¶ 229.  *Exhibit List A* lists but does not provide copies of any exhibits.  Exhibits 22a-22c are identified as:

    22a.  Plaintiff's 1st Call to NMHRA Hotline to Open Claim (1-9-25)
    22b.  1st Call From Rick Lucas, NMHRA Investigator Regarding Claim #25-01-0021-E (2-7-25)
    22c.  2nd Call From Rick Lucas, NMHRA Investigator Regarding Claim #25-01-0021-E (2-7-25)

Doc. 6 at 22.

participation in the City's youth basketball league had any relation to his son's BIP or any educational programming at Enchanted Hills Elementary, or how his son's participation on the "B" team resulted in a loss of equal access to a meaningful educational opportunity. *Id.* Defendant RRPS additionally argues that Plaintiff fails to allege facts demonstrating that his son's diagnosis of ADHD "substantially limits one or more of his major life activities" as defined under the NMHRA which is necessary for qualifying him as a member of a protected class. *Id.* Defendant RRPS argues that individuals with limited social access or athletic experience are not defined classes of protected people under the NMHRA and Plaintiff has failed to allege facts demonstrating other children with "perceived disabilities" on his son's basketball team had physical or mental disabilities that substantially limit one or more major life activities. *Id.*

Those arguments aside, Defendant RRPS moves to dismiss Count II pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim because Plaintiff has failed to exhaust his administrative remedies as required under the NMHRA. *Id.* Defendant RRPS argues that Plaintiff cannot bring a claim unless and until his administrative remedies have been exhausted. *Id.* Here, Defendant RRPS argues that Plaintiff's allegation of exhaustion is conclusory. *Id.* Defendant RRPS argues that had Plaintiff timely requested a right to sue letter, or an order of nondetermination, he would have been provided with one which would have enabled his ability to file suit on the underlying claim. *Id.* Defendant RRPS argues that Plaintiff has not provided an order of nondetermination or a right to sue letter. *Id.*

In Response, Plaintiff argues that Defendants' Motion relies on contested factual assertions outside the pleadings and ignores numerous factual allegations in the Complaint that must be accepted as true.[21]  Doc. 22 at 3.

---

[21] *See* fns. 2, 3, 4, *supra.*

In Reply, Defendants contend that Plaintiff's Response does not address any of the arguments raised in the Motion and that by failing to do so concedes that Plaintiff's claim pursuant to the NMHRA should be dismissed.  Doc. 42 at 6.

The NMHRA prohibits unlawful discriminatory practices in the context of employment, housing, credit, and public accommodations.  N.M. Stat. Ann. §§ 28-1-7(A)-(F), 28-1-10.  To state a viable claim under the NMHRA, a plaintiff must allege facts showing that he: (1) falls within one of the statute's protected classes; (2) was subject to discrimination in one of the enumerated contexts; and (3) exhausted administrative remedies before filing suit.  *See Tafoya v. Bobroff*, 865 F. Supp. 742, 747-48 (D.N.M. 1994) ("The New Mexico Supreme Court recently and unequivocally held that a plaintiff under the [NMHRA] must exhaust his or her administrative remedies against each defendant before he or she may sue the defendant in court.") (citing *Luboyeski v. Hill*, 1994-NMSC-032, ¶ 7, 177 N.M. 380, 382, 872 P.2d 353, 355 (1994)).

Plaintiff's Complaint fails to allege facts sufficient to demonstrate he has exhausted his administrative remedies pursuant to the requirements of NMHRA.[22]  *See* NMSA, Section 28-1-10 (detailing grievance procedure for persons claiming to be aggrieved by an unlawful discriminatory practice that includes, *inter alia*, filing a written complaint, notice to respondent with a copy of complaint, investigation, and determination).  Instead, Plaintiff alleges, without more, that he made a call to the "NMHRA hotline" and received two phone calls from an investigator who denied Plaintiff a right to sue letter.  Doc. 6 at 6, 22.  This is insufficient to demonstrate exhaustion.  Plaintiff's failure to exhaust the required administrative remedies is

---

[22] Because the Court concludes that dismissal is warranted based on Plaintiff's failure to exhaust administrative remedies, it does not reach or address Defendants' other asserted grounds for dismissal of Count II.

fatal to his claim. *See Luboyeski*, 1994-NMSC-032, ¶ 7. The Court, therefore, finds Defendants'

Motion is well taken and **DISMISSES WITHOUT PREJUDICE** Count II of Plaintiff's

Complaint as against Defendant RRPS.

### B.      Plaintiff's Claims Against Defendant Bobbie Martinez

Plaintiff's Complaint alleges seven claims against "Defendants 4-11 (in their individual

capacities)" and "Defendants 12-21 (private actors)." Plaintiff's Complaint identifies Defendant

"21" as Bobbie Martinez, a Cleveland Storm parent. Doc. 6 at 2. Plaintiff's Complaint alleges

four claims against Defendants 4-11 and Defendants 12-21 pursuant to 42 U.S.C. § 1983:

(1) Count VII - Violation of Free Speech Rights; (2) Count VIII - Retaliation for Protected

Speech; (3) Count IX – Conspiracy to Violate Free Speech Rights; and (4) Count XV - Violation

of Equal Protection on the Basis of Race. Doc. 6 at 11-14, 16. Plaintiff's Complaint also alleges

three common law claims against "Defendants 4-11" and "Defendants 12-21": (1) Count XI -

Civil Conspiracy to Violate Plaintiff's Free Speech; (2) Count XVIII - Intentional Infliction of

Emotional Distress; and (3) Count XIX - Defamation. *Id.* at 18-19.

### 1.      1983 Claims

In support of his federal constitutional free speech and equal protection violations against

Defendants 12-21, Plaintiff incorporates factual allegations presented in Counts IV and XII of his

Complaint against Defendants City of Rio Rancho and RRPD pursuant to the New Mexico Civil

Rights Act. In Count IV, Plaintiff alleges in relevant part:

> Plaintiff engaged in multiple acts of protected expression, including: (1) publicly
> criticizing the Rio Rancho Parks and Recreation Department's youth basketball
> league; (2) filing formal IPRA requests for public records regarding the youth
> basketball league; (3) filing official City of Rio Rancho complaints against the
> defendants on January 8, 2025; and (4) filing a Writ of Mandamus in state court on
> January 14, 2025, seeking judicial enforcement of transparency and fairness in the
> youth basketball league. . . .

These efforts were targeted at exposing the City's misuse of public programs and discriminatory practices affecting Plaintiff's son and other children.

The public records show that, in response to this protected speech, Defendants City of Rio Rancho and the Rio Rancho Police Department engaged in a coordinated retaliatory campaign.

This included removing him as an assistant coach of his son's team, soliciting and promoting false complaints from all of the private defendants accusing Plaintiff of a race based hate crime due to his race, excluding Plaintiff from league practices and city-owned facilities, opening up a baseless criminal investigation, and using police authority to threaten or punish Plaintiff without lawful justification. . . .

Peterson took the knowingly false emails and texts she had solicited from the private defendants 13-21 to a meeting on February 18, 2025 with Geisel and Rubin. . . .

. . .

The incorporated exhibits show that defendants 4-21 were having internal discussions with each other all season and sharing the information that Plaintiff had been publicly critical of the Cleveland Storm team and asking public officials to remove their team from the league for league violations.

In response the Storm coach and parents, defendants 14-21 coordinated a vicious campaign with the City of Rio Rancho defendants to knowingly submit false complaints alleging Plaintiff of committing race based hate crimes which were later disproved by defendant Samuel's police report.

. . .

Plaintiff has also incorporated exhibits, which shows Peterson soliciting emails and texts regarding the false race hate crime allegations from the private defendants 13-21. Those exhibits show her acknowledging she was going to take them to show them to Geisel and Rubin in the meetings. Peterson even suggests that Geisel and Rubin were encouraging her solicitation of the emails.

. . .

These actions were undertaken in direct response to Plaintiff's speech and were intended to silence him, remove him from public view, and prevent further exposure of city misconduct. City officials also solicited false complaints to discredit Plaintiff and create pretext for retaliation. . . .

22

Doc. 6 at 8-10.[23]  In Count XII, Plaintiff alleges that:

> Defendants 12-21, acting in concert with City officials, participated in the fabrication and promotion of false race-based accusations specifically because Plaintiff is a white male who publicly criticized a league administered by persons of color and individuals politically aligned with City officials.
>
> As a white person, Plaintiff is a minority race in New Mexico.  His exclusion and punishment reflect unlawful discrimination on the basis of race in violation of constitutional protections.
>
> These actions demonstrate that Plaintiff was treated differently than similarly situated residents based on his race, and that race was a motivating factor in the Defendants' decision to ban and retaliate against him.

---

[23] Plaintiff cites numerous exhibits listed on "*Exhibit List A* – (In support of complaint)."  Doc. 6 at 8, ¶¶ 285, 294, 296, 301, 309, 334, 342, 345, 352, 361, 372, 378.  *Exhibit List A* lists but does not attach any actual exhibits.  Plaintiff's cited list of exhibits includes:

| | |
|---|---|
| Exhibit 1k – | IPRA Request Confirmation - 12/18/2024 |
| Exhibit 4c – | Plaintiff's Complaint to Geisel about Peterson, Green, Trujillo - 1/8/2025 |
| Exhibit 4e – | Peterson Texts w/Cleveland Storm Parent Theresa Smith - 1/18/2025 and 2/17/2025 |
| Exhibit 4f – | Peterson Texts w/Coach Torenzo Johnson - 2/15/2025 |
| Exhibit 4g – | Peterson Text w/ Melissa Franklin - 1/14/2025 |
| Exhibit 4h – | Peterson Ban Letter to Plaintiff - 2/19/2025 |
| Exhibit 4j – | Plaintiff's email response to Ban Letter - 2/19/2025 |
| Exhibits 7a - | Maez Complaint to Geisel and Rubin about Plaintiff - 1/11/2025 |
| Exhibits 7b - | Maez Complaint to Geisel and Rubin about Plaintiff - 1/11/2025 |
| Exhibits 7c - | Maez Complaint to Geisel and Rubin about Plaintiff - 1/11/2025 |
| Exhibit 8a - | Lury's Complaint to Geisel and Rubin about Plaintiff - 12/14/2024 |
| Exhibit 8b - | Lury's Complaint to Geisel and Rubin about Plaintiff - 1/18/2025 |
| Exhibit 8c - | Lury's Complaint to Geisel and Rubin about Plaintiff - 2/15/2025 |
| Exhibit 11a - | Samuel's Police Report Clearing Plaintiff - 2/19/2025 to 3/12/2025 |
| Exhibit 11b - | Abernathy's Police Report Clearing Plaintiff - 2/19/2025 to 3/12/2025 |
| Exhibit 11c - | Plaintiff's returned call to Samuel - 2/18/2025 |
| Exhibit 11d - | Samuel's MAC Facility Trespass Notice to Plaintiff - 2/19/2025 |
| Exhibit 11e - | Plaintiff's Complaint to Geisel and Rubin about Samuel - 5/22/2025 |
| Exhibit 12a - | Johnson's Email to McDermott about Plaintiff - 2/19/2025 |
| Exhibit 12b - | McDermott Ban Text to Plaintiff - 2/17/2025 |
| Exhibit 13a - | Johnson's Text to Peterson about Plaintiff - 2/15/2025 |
| Exhibit 13b - | Johnson's Email to McDermott about Plaintiff - 2/18/2025 |
| Exhibit 15a - | Theresa Smith's Email to Peterson about Plaintiff - 1/11/2025 |
| Exhibit 16a - | Melissa Montoya Franklin's Email to Peterson about Plaintiff - 1/11/2025 |
| Exhibit 17a - | Ana Kuny Slock's Emails to Peterson about Plaintiff - 2/17/2025 |
| Exhibit 17b - | Plaintiff's Notice of Lawsuit to Slock – 6/16/2025 |
| Exhibit 18a - | Raquel DeTomasso's Emails to Peterson about Plaintiff – 2-17-2025 |
| Exhibit 19a - | Bianca Fisher's Emails to Peterson about Plaintiff – 2/17/2025 |
| Exhibit 20a - | Michael Fisher's Emails to Peterson about Plaintiff – 2/15/2025 |
| Exhibit 21a - | Bobbie Martinez's Emails to Peterson about Plaintiff – 2/16/2025 |
| Exhibit 23a - | Kurt Viller's Text to Plaintiff (Conspiracy) |
| Exhibit 23c - | Transcript of Recorded Meeting Between Petrson, Trujillo, and Samuel – 2/18/2025 |
| Exhibit 23e - | Melissa Pitts Email of Sent Surveillance Videos to Plaintiff – 3/14/2025 |

Doc. 6 at 14-15.

Plaintiff alleges that Defendants 12-21, while not government officials, knowingly acted in coordination with state actors to advance the retaliatory scheme by providing false statements and supporting exclusionary measures thereby rendering their actions attributable to the state under the joint action doctrine. *Id.* at 11-13, 16. Plaintiff further alleges that Defendants 12-21 intentionally targeted Plaintiff with derogatory statements and knowingly false accusations and engaged in behavior designed to harm Plaintiff's reputation and emotional well-being. *Id.* at 18-19. Plaintiff alleges he has suffered extreme emotional distress, damage to his reputation, and loss of personal and professional standing in the community. *Id.*

In their Motion, Defendants argue that Plaintiff's claims against Defendant Martinez fail as a matter law because Plaintiff fails to allege particularized facts showing that Defendant Martinez took actions that were unconstitutional, that she conspired against Plaintiff, intentionally targeted Plaintiff, or that she made false allegations against Plaintiff with the intent to damage his reputation.[24] Doc. 9 at 20-27. Defendants argue that Plaintiff's § 1983 claims against Defendant Martinez are subject to dismissal because Plaintiff has not alleged any plausible facts supporting state action against her, *i.e.,* that Defendant Martinez is a public actor. *Id.* Defendants argue that Plaintiff has not alleged plausible facts supporting that Defendant Martinez took individual acts as a state actor to violate Plaintiff's free speech. *Id.* Defendants argue that Plaintiff's Complaint fails to allege a single factual allegation as to what action Defendant Martinez took as a state actor in retaliation against Plaintiff's exercise of his First Amendment rights. *Id.* Defendants argue that Plaintiff's Complaint fails to allege or

---

[24] Defendant Martinez also adopts and incorporates by reference arguments made by Defendant McDermott, Theresa Smith, Stephen Smith, and Torenzo Johnson in their Motion to Dismiss . Doc. 9 at 21.

demonstrate a sufficient level of state involvement to constitute joint participation by Defendant Martinez in any alleged violation of Plaintiff's First Amendment rights. *Id.* Defendants argue that Plaintiff has failed to make any allegations sufficient to implicate the equal protection clause. *Id.*

In Response, Plaintiff argues that Defendants' Motion relies on contested factual assertions outside the pleadings and ignores numerous factual allegations in the Complaint that must be accepted as true.[25] Doc. 22 at 3.

In Reply, Defendants contend that Plaintiff's Response does not address the claims against Defendant Martinez and therefore concedes that those claims should be dismissed. Doc. 42 at 8.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert acts by government officials acting under color of law that result in a deprivation of rights secured by the United States Constitution. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). There must be a connection between official conduct and violation of a constitutional right. Conduct that is not connected to a constitutional violation is not actionable under Section 1983. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006). Plaintiff must allege some personal involvement by an identified official in the alleged constitutional violation to succeed under § 1983. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). In a Section 1983 action, it is particularly important that a plaintiff's complaint "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in the original). Generalized statements that defendants caused the deprivation of a constitutional right, without

---

[25] *See* fns. 2, 3, 4, *supra.*

plausible supporting factual allegations, do not state any claim for relief.  *Robbins*, 519 F.3d at 1249-50.

In order to survive a Rule 12(b)(6) motion to dismiss a § 1983 claim, a plaintiff must allege "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia." *Summum v. City of Ogden,* 297 F.3d 995, 1000 (10th Cir. 2002) (quotation omitted).

Where a litigant seeks to hold a private actor accountable as a state actor for constitutional deprivations, the Tenth Circuit has applied various analyses and referred to them as the "nexus test," the "public function test," the "joint action test," and the "symbiotic relationship test." *Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013) (citing *Johnson v. Rodrigues,* 293 F.3d 1196, 1202–03 (10th Cir. 2002) (citing *Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442 (10th Cir.1995))).  Here, Plaintiff asserts state action based on the joint action test.

The Tenth Circuit has required plaintiffs seeking to assert § 1983 claims under a joint-action theory to show that the "private party is a 'willful participant in joint action with the State or its agents.' " *Gallagher,* 49 F.3d at 1453 (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)).  A plaintiff must "present facts tending to show agreement and concerted action" between the private citizen and state officials.  *Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000) (citing *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983)).  By contrast, a joint action claim under § 1983 will not lie where "the record indicate[s] that the police officers had made an independent decision to make the challenged arrest."  *Gallagher*, 49 F.3d at 1454; *Carey v.*

26

*Continental Airlines, Inc.*, 823 F.2d 1402 (10th Cir. 1987) (joint action test not met where record contained no evidence that alleged unconstitutional arrests "resulted from any concerted action, whether conspiracy, prearranged plan, customary procedure, or policy that...allowed a private party to exercise state power"); *Lee v. Town of Estes Park, Colo.*, 820 F.2d 1112, 1115-17 (10th Cir. 1987) (Tenth Circuit declined to apply joint action doctrine "where a private party is simply reporting suspected criminal activity to state officials who then take whatever action they believe the facts warrant"). In applying this test, some courts have adopted the requirements for establishing a conspiracy under Section 1983. These courts conclude that "[a] requirement of the joint action charge . . . is that both public and private actors share a common, unconstitutional goal." *Gallagher*, 49 F.3d at 1454 (quoting *Cunningham v. Southlake Ctr. For Mental Health, Inc.,* 924 F.2d 106, 107 (9th Cir. 1991)).

Plaintiff's Complaint fails to allege facts sufficient to state a 1983 claim against Defendant Martinez. To begin, the factual allegations in Plaintiff's Complaint do not mention Defendant Martinez by name even once and instead Plaintiff identifies her only as part of "Defendants 12-21." This is insufficient to state a 1983 claim. *Robbins,* 519 F.3d at 1249-50 (explaining it is particularly important that a plaintiff's complaint "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her."). Further, the only action Plaintiff attributes to Defendant Martinez is found in his reference to Exhibit 21a (part of a string cite of twenty-three exhibits)[26] and identified on *Exhibit List A* as an email from Defendant Martinez to Defendant Peterson. Doc. 6 at 8, ¶ 294 (citing Exhibit 21a).[27] This is also insufficient. *Id.* (explaining that

---

[26] *See* fn. 23, *supra*.

[27] *Exhibit List A* lists but does not attach any actual exhibits.

generalized statements that defendants caused the deprivation of a constitutional right, without plausible supporting factual allegations, do not state any claim for relief).

Moreover, Plaintiff's allegations regarding conspiratorial joint action between Defendant Martinez and the City of Rio Rancho are conclusory and speculative.  Here, Plaintiff alleges that "Defendants 4-21" were sharing information amongst themselves that Plaintiff wanted public officials to remove the Cleveland Storm team from the league for alleged league violations.[28] Doc. 6 at 10, ¶¶ 353-55.  Plaintiff alleges the "Storm coach and parents, defendants 14-21" in turn coordinated a "vicious campaign with the City of Rio Rancho" to knowingly submit false complaints about Plaintiff committing "race based hate crimes."  *Id.* at ¶¶ 356-58.   Plaintiff alleges that "Defendants 13-21" sent emails to Defendant Peterson that contained false race-based complaints about Plaintiff's "acting and threatening" the coaches, parents, and players on the Cleveland Storm basketball team at league basketball games.  *Id.* at 3, 10, ¶¶ 92-93, 362-63. Plaintiff alleges the false emails were part of a coordinated campaign by "Defendants 12-21" with the City of Rio Rancho to justify banning Plaintiff from league participation in direct response to his speech regarding the City's discriminatory misconduct.  *Id.* at 10,  ¶¶ 356-57, 370-71.  These allegations, apart from not making clear exactly who is alleged to have done what to whom, fail to show that Defendant Martinez was acting in concert with state actors to violate Plaintiff's constitutional rights and instead relies on unadorned accusations and unsupported legal conclusions.  *See Griffin v. City of Artesia*, 2023 WL 5337133, *9 (Aug. 18, 2023) (unpublished) ("Although a court considering a Rule 12(b) motion must take as true a plaintiff's factual allegations, that presumption does not apply to everything a complaint alleges.  *Twombly*

---

[28] Plaintiff alleges that Cleveland Storm violated league rules because they were a "hand picked all star team." Doc. 6 at 3, ¶ 85.

forbade presuming as true any legal conclusions, unadorned accusations, or perfunctory regurgitations of legal elements.").

For instance, that certain Defendants talked amongst themselves about Plaintiff wanting the Storm team removed from the league is insufficient to show an agreement and concerted action to violate Plaintiff's constitutional rights.  *See Haynes v. City and County of Denver, Colorado*, 2006 WL 8454571, *3 (D. Colo. Mar. 31, 2006) (citing *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (explaining that it is not reasonable to infer that faculty and administrators who met during an investigation were conspiring with one another). Additionally, Plaintiff's claim of a subsequent coordinated campaign against him is conclusory and devoid of specific factual allegations in support.  *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Helson, P.C.*, 956 F.3d 1228, 1235 (10th Cir. 2020) (citing *Beedle v. Wilson*, 422 F.3d 1059, 1073 (10th Cir. 2005) ("[T]he plaintiff must specifically plead facts tending to show agreement and concerted action." (internal quotation marks omitted))).  Further, Plaintiff's allegation that Defendant Martinez, and other private actors, sent allegedly false emails to City officials fails to support a plausible inference that public actors were acting under her influence when she was merely furnishing of information.  *See generally, Lee,* 820 F.2d at 1115-17 (Tenth Circuit declined to apply joint action doctrine "where a private party is simply reporting suspected criminal activity to state officials who then take whatever action they believe the facts warrant").  Indeed, while Plaintiff disputes the veracity of the email(s) sent by Defendant Martinez, and other private actors, Plaintiff's Complaint nonetheless reveals their subject, *i.e.,* complaints regarding Plaintiff's threatening behavior toward the Storm coach and parents at two league games on February 15, 2025.  *See id.*  Finally, Plaintiff's Complaint fails to allege facts showing that any state actor Defendant who allegedly deprived Plaintiff of certain constitutional

rights did so under Defendant Martinez's influence or that any state actor Defendant relied upon or substituted their own judgment for hers.

In sum, Plaintiff's Complaint fails to allege facts to support a plausible inference that Defendant Martinez shared a common, unconstitutional goal with state actor Defendants or that any state actors acted under Defendant Martinez's influence.

In sum, Plaintiff's Complaint fails to allege facts to support a plausible inference that Defendant Martinez violated Plaintiff's federal Constitutional rights under a theory of joint action with state actor Defendants.  The Court, therefore, finds Defendants' Motion is well taken and **DISMISSES WITH PREJUDICE** Counts VII, VIII, IX, and XV as against Defendant Bobbie Martinez for failure to state a § 1983 claim.

### 2.    Common Law Claims

#### a.    Civil Conspiracy to Violate Plaintiff's Free Speech Rights

Plaintiff's Complaint alleges in Count XI that "Defendants 4-11 (in their individual capacities)" and "Defendants 12-21 (private actors)" were part of a "joint conspiracy under color of state law to violate Plaintiff's constitutional speech rights under Article II, § 17" of the New Mexico Constitution.  Doc.  6 at 14, ¶¶ 521-23.  Plaintiff incorporates by reference the same factual allegations presented with respect to his federal Constitutional claims against "Defendants 4-11" and "Defendants 12-21."

Defendants argue that a "conspiracy claim requires a sufficient level of state involvement to constitute joint participation in the unconstitutional actions," and notwithstanding Plaintiff's failure to allege any specific acts against Defendant Martinez, his conspiracy claim must be dismissed because Plaintiff fails to demonstrate a sufficient level of state involvement to

constitute joint participation by Defendant Martinez in any alleged violation of Plaintiff's speech rights.  Doc. 9 at 23-24 (citing *Soldal v. Cook County*, 506 U.S. 56, 60 (1992)).

In order to prevail in a claim for civil conspiracy, a plaintiff is required to show that: (1) a conspiracy existed between two or more individuals; (2) pursuant to the conspiracy, the defendants carried out specific wrongful acts; and (3) the plaintiff was damaged as a result of these acts.  *Cain v. Champion Window Co. of Albuquerque, LLC*, 2007-NMCA-085, ¶ 28 (N.M. App. 2007).  However, the tort of civil conspiracy does not provide an independent basis for liability; instead, it requires the plaintiff to establish "an independent unlawful act—*i.e.* "something that would give rise to a civil action on its own." *Id.*  In this case, Plaintiff's civil conspiracy claim is tied to his violation of free speech rights.

Plaintiff's Complaint fails to allege facts specific to Defendant Martinez.  Additionally, the Court has addressed Plaintiff's free speech violations and conspiracy claim against Defendant Martinez pursuant to § 1983 and concluded that Plaintiff's Complaint fails to allege facts to support joint action.  *See* Section IV.B.1., *supra*.  The Court, therefore, finds Defendants' Motion is well taken and dismisses with prejudice Count XI as against Defendant Bobbie Martinez for failure to state a claim.  *Cain*, 2007-NMCA-085, ¶ 28 (holding that the plaintiff's civil conspiracy claim failed because the underlying claim to which it was tied was not actionable).

### b.    <u>Intentional Infliction of Emotional Distress (IIED)</u>

In Count XVIII, Plaintiff incorporates by reference the same factual allegations presented with respect to his federal Constitutional claims against "Defendants 4-11 (in their individual capacities) and "Defendants 12-21 (private actors)."  Doc. 6 at 18.  Plaintiff alleges that Defendants intentionally targeted him by making derogatory and knowingly false accusations and maliciously engaging in behavior designed to harm Plaintiff's reputation and emotional well-

being.  Doc. 6 at 18.  Plaintiff alleges Defendants' actions were deliberate, extreme, and outrageous, and caused Plaintiff severe emotional distress.  *Id.*

Defendants argue that Plaintiff fails to allege particularized facts that Defendant Martinez's conduct was extreme and outrageous, intentional or in reckless disregard of Plaintiff, that his mental distress was extreme or severe, or that there was a causal connection between Defendant Martinez's specific actions and Plaintiff's mental distress.  Doc. 9 at 26.  Defendants argue that Plaintiff makes no allegations of specificity as to what Defendant Martinez allegedly did, and Plaintiff's conclusory allegations are insufficient to maintain this suit.  *Id.* (citing *Robbins*, 519 F.3d at 1249-50).

To state a claim for IIED under New Mexico law, a Plaintiff must show "(1) the defendant's conduct was extreme and outrageous; (2) the defendant's conduct was intentional or in reckless disregard of the effects on the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the plaintiff's distress."  *Hartwell v. Sw. Cheese Co., LLC*, 276 F. Supp. 3d 1188, 1213-14 (D.N.M. 2016) (citation omitted).

Here, Plaintiff's allegations are nothing more than a formulaic recitation of the elements of a cause of action.  This is insufficient for stating a claim for relief.  *Iqbal,* 556 U.S. at 678.  Additionally, Plaintiff's Complaint fails to allege facts specific as to Defendant Martinez.  This is also insufficient for stating a claim for relief.  *Robbins*, 519 F.3d at 1259-50.  Further, Plaintiff's Complaint fails to allege facts sufficient to support that Defendant Martinez's sending an email to Defendant Peterson about Plaintiff amounts to harassing, extreme, or outrageous behavior.  *See Silverman v. Progressive Broadcasting, Inc.,* 1998–NMCA–107, ¶ 32 (N.M. App. 1998) ("Extreme and outrageous conduct is described as conduct so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.") (internal quotations omitted); *see also Allin v. Schuchmann,* 886 F. Supp. 793, 799–800 (D. Kan. 1995) (testifying falsely in criminal case is not so extreme and outrageous to allow claim for intentional infliction of emotional distress).

The Court, therefore, finds Defendants' Motion is well taken and **DISMISSES WITHOUT PREJUDICE** Count XVIII as against Defendant Bobbie Martinez for failure to state a claim.

### c.    Defamation

In Count XIX, Plaintiff incorporates by reference the same factual allegations presented with respect to his § 1983 free speech violation claims against "Defendants 4-11 (in their individual capacities) and "Defendants 12-21 (private actors)." Doc. 6 at 18-19. Plaintiff alleges that Defendants made false statements that were published with knowledge of their falsity or with reckless disregard for the truth. *Id.* Plaintiff alleges that Defendants were aware that their accusations were false and intended to damage Plaintiff's reputation, intimidate him, and retaliate against him for speaking out about the discriminatory practices in the youth basketball league. *Id.* Plaintiff alleges that he has suffered harm, including emotional distress, damage to his reputation, and loss of personal and professional standing in this community. *Id.*

Defendants argue that aside from reciting his allegation that "the Storm coach and parents . . . coordinated a vicious campaign with the City of Rio Rancho defendants to knowingly submit false complaints alleging [him] of committing race based hate crimes[,]" Plaintiff fails to allege any particularized facts demonstrating that Defendant Martinez made any defamatory comments.

33

Doc. 9 at 27 (citing *Robbins*, 519 F.3d at 1249-50).  Defendants argue that "[s]imply put –

Plaintiff fails to even allege what Ms. Martinez allegedly said that was defamatory."  *Id.*

To establish the claim of defamation on the part of defendant, the plaintiff has the burden

of proving each of the following contentions: (1) the defendant published the communication;

and (2) the communication contains a statement of fact; and (3) the communication was

concerning the plaintiff; and (4) the statement of fact was false; and (5) the communication was

defamatory; and (6) the person[s] receiving the communication understood it to be defamatory;

and (7) the defendant [knew that the communication was false or negligently failed to recognize

that it was false] [or] [acted with malice]; and (8) the communication caused actual injury to the

plaintiff's reputation; and (9) the defendant abused [its] privilege to publish the communication.

UJI 13-1002(B) NMRA.  A defamation pleading is sufficient to survive a motion to dismiss if a

plaintiff pleads sufficient factual matter to state a claim for relief that is plausible on its face in

either direct or inferential relation to each element of the defamation claim.  *Choq, LLC v.*

*Holistic Healing*, LLC, 2020 WL 8175553, at *4 (D. Wyo. July 28, 2020).

Here, Plaintiff's allegations are nothing more than a formulaic recitation of the elements

of a cause of action.  This is insufficient for stating a claim for relief.  *Iqbal,* 556 U.S. at 678.

Additionally, Plaintiff's Complaint fails to allege facts specific to Defendant Martinez.  This is

also insufficient for stating a claim for relief.  *Robbins*, 519 F.3d at 1259-50.  Here, Plaintiff's

Complaint broadly alleges, without more, that "Defendants 41-21 coordinated a vicious

campaign with the City of Rancho defendants to knowingly submit false complaints alleging

Plaintiff of committing race based hate crimes which were later disproved by defendant Samuel's

police report."  Doc. 6 at 10, ¶¶ 356-58.  Plaintiff's conclusory allegation fails to plead sufficient

34

factual matter to state a claim for relief that is plausible on its face in either direct or inferential relation to each element of the defamation claim.

The Court, therefore, finds Defendants' Motion is well taken and **DISMISSES WITHOUT PREJUDICE** Count XIX as against Defendant Bobbie Martinez for failure to state a claim.

### C.    Fed. R. Civ. P. 15(a)

"Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson County Sch. Dist. v. Moody's Investor's Services*, 175 F.3d 848, 859 (10th Cir.1999), *quoted in Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004).

Plaintiff has not sought leave of the Court to amend his Complaint.  The Court, however, having dismissed certain claims without prejudice, nonetheless finds that granting leave to amend would be futile.  *See Hall*, 935 F.2d at 1109-10 ("Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a court may dismiss *sua sponte* when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.") (internal quotation marks omitted).  Here, certain of Plaintiff's claims have been dismissed without prejudice for his failure to exhaust administrative remedies. Additionally, Plaintiff's Complaint alleging state law tort claims against Defendant Martinez, apart from being void of any factual allegations specific to her, are premised on or flow from Plaintiff's alleged federal Constitutional violations against Defendant Martinez which the Court has dismissed with prejudice.  For these reasons, it appears to the Court beyond all doubt that the

plaintiff can prove no set of facts in support of those claims dismissed without prejudice which would entitle him to relief.

## V.  CONCLUSION

For the foregoing reasons, the Court finds that Defendants Rio Rancho Public Schools and Bobbie Martinez's Motion to Dismiss Complaint is well taken and is **GRANTED** as follows:

**IT IS THEREFORE ORDERED** that Count I – Violation of IDEA of Plaintiff's Complaint against Defendant Rio Rancho Public Schools is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies;

**IT IS FURTHER ORDERED** that Count II – Disparate Impact Discrimination Pursuant to NMHRA of Plaintiff's Complaint against Defendant Rio Rancho Public Schools is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies;

**IT IS FURTHER ORDERED** that Count VII – Violation of Free Speech Rights, Count VIII – Retaliation for Protected Speech, Count IX – Conspiracy to Violate Plaintiff's Free Speech Rights, and Count XV – Violation of Equal Protection on the Basis of Race pursuant to 42 U.S.C. § 1983 against Defendant Bobbie Martinez are **DISMISSED WITH PREJUDICE** for failure to state a claim;

**IT IS FURTHER ORDERED** that Count XI – Civil Conspiracy to Violate Plaintiff's Free  Speech Rights (Common Law Civil Conspiracy) against Defendant Bobbie Martinez is **DISMISSED WITH PREJUDICE** for failure to state a claim;

**IT IS FURTHER ORDERED** that Count XVIII – Intentional Infliction of Emotional Distress and Count XIX – Defamation against Defendant Bobbie Martinez **are DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

**IT IS SO ORDERED.**

_____

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**