## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JARROD LOWREY,**

      **Plaintiff,**

      **vs.**                                    **Civ. No. 25-849  JFR/LF**

**CITY OF RIO RANCHO,**
**RIO RANCHO PUBLIC SCHOOLS,**
**RIO RANCHO POLICE DEPARTMENT,**
**CONNIE PETERSON, in her official and individual capacities,**
**LORENZO GREEN, in his official and individual capacities,**
**NOAH TRUJILLO, in his official and individual capacities,**
**BRANDON MAEZ, in his official and individual capacities,**
**ELLIANA LURY, in her official and individual capacities,**
**MATT GEISEL, in his official and individual capacities,**
**JOSH RUBIN, in his official and individual capacities,**
**LAWRENCE SAMUEL, in his official and individual capacities,**
**MIKE McDERMOTT, in his private capacity as 3rd party conspirator,**
**TORENZO JOHNSON, in his private capacity as 3rd party conspirator,**
**STEPHEN SMITH, in his private capacity as 3rd party conspirator,**
**THERESA SMITH, in her private capacity as 3rd party conspirator,**
**MELISSA MONTOYA, in her private capacity as 3rd party conspirator,**
**ANA KUNY SLOCK, in her private capacity as 3rd party conspirator,**
**RAQUEL DeTOMASSO, in her private capacity as 3rd party conspirator,**
**BIANCA FISHER, in her private capacity as 3rd party conspirator,**
**MICHAEL FISHER, in his private capacity as 3rd party conspirator,**
**BOBBIE MARTINEZ, in her private capacity as 3rd party conspirator,**

      **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER[1]</u>

      **THIS MATTER** is before the Court on Defendants City of Rio Rancho, Rio Rancho

Police Department, Matt Geisel, Josh Rubin, Connie Peterson, Lawrence Samuel, Lorenzo

Green, Noah Trujillo, Brandon Maez, Elliana Lury, Theresa Smith, Stephen Smith, Torenzo

Johnson, Bianca Fisher, Michael Fisher, Melissa Montoya, Ana Kuny Slock, Raquel DeTomasso,

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  Doc. 37.

and Michael McDermott's Opposed Motion to Dismiss the Complaint and Qualified Immunity

("Motion"), filed September 5, 2025.  Docs. 10, 12.  On September 22, 2025, Plaintiff filed a

Limited Response.[2][3][4]  Doc. 22.  On October 6, 2025, Defendants filed a Reply.  Doc. 44.  On

October 7, 2025, Defendants filed a Notice of Completion of Briefing.  Doc. 45.

## I.  PROCEDURAL BACKGROUND

On July 28, 2025, Plaintiff filed a Complaint in the Thirteenth Judicial District Court,

County of Sandoval, State of New Mexico, against the City of Rio Rancho, Rio Rancho Public

Schools ("RRPS"), Rio Rancho Police Department ("RRPD"), and eighteen individuals in their

official, individual, and/or private third-party conspirator capacities.  Doc. 6 at 1-19.  Plaintiff's

---

[2] Plaintiff provided what he characterizes is a "limited response" and in so doing argues, without any legal support, that pending rulings on his *Emergency Motion to Remand* and *Motion to Disqualify City Attorney From Representing Individual Defendants In Their Personal Capacities* that this Court's jurisdiction is not established and that a ruling on Defendants' Motion is premature and contrary to federal law.  Plaintiff is mistaken.  Removal divests the state court of its jurisdiction, and the federal court acquires full and exclusive jurisdiction over the case as though it had been originally commenced in the federal court.  *Bruley v. Lincoln Property Co., N.C., Inc.,* 140 F.R.D. 452 (D. Colo., 1991) (Removal of a state action to federal court immediately divests state court of jurisdiction) (citing 28 U.S.C. § 1446)).  Thus, by operation of law, all motions pending in state court at the time of removal remain pending as if they had been filed in federal court.  *See In re Montgomery Mall Ltd. P'ship*, 704 F.2d 1173, 1176 (10th Cir. 1983) (string citation omitted) (explaining that it is well settled that "motions pending in state court survive removal to federal court.").  While pleadings from *pro se* litigants are construed liberally, *pro se* litigants are obligated to comply with the rules of civil procedure.  *Ogden v. San Juan Cty*., 32 F.3d 452, 455 (10th Cir. 1994); *see also Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) ("liberal treatment [for *pro se* litigants] is not without limits, and this court has repeatedly insisted that *pro se* parties follow the same rules of procedure that govern other litigants." (internal quotation marks omitted); *Keeher v. Dunn*, 409 F. Supp. 2d 1266, 1270 (D. Kan. 2005) ("plaintiffs are not excused from compliance with fundamental rules of procedure because they are proceeding *pro se*.  *Pro se* litigants must follow rules of procedures, including local rules.").  Compliance with the rules of civil procedure, therefore, is not at Plaintiff's discretion and the Court will not allow Plaintiff to ignore them.  In accordance with this Court's Local Rules, Plaintiff's Response was due within fourteen (14) calendar days after service of the motion.  D.N.M.LR-Civ. 7.4(a).  Additionally, "[t]he failure of a party to file and serve a response in support of a motion within the time prescribed for doing so constitutes consent to grant the motion."  D.N.M.LR-Civ. 7.1(b).

[3] Although no meaningful response has been filed, the court must be satisfied a basis for dismissal exists. *See Fournerat v. Wisconsin Law Review*, 420 Fed. Appx 816, 819 (10th Cir. 2011) ("Under Tenth Circuit precedent, however, 'a district court may not grant a motion to dismiss for failure to state a claim merely because a party failed to file a response.' ") (quoting *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003)).

[4] On December 24, 2025 - *ninety-three days after* Plaintiff filed his Limited Response, *seventy-eight days after* the Notice of Completion of Briefing (Doc. 47) was filed, *forty-nine days after* the Court denied Plaintiff's Emergency Motion to Remand (Doc. 48), and *without permission of the Court* - Plaintiff filed a "full" Response to Defendants' Motion to Dismiss.  Doc. 60.  On January 7, 2026, Defendants filed a Motion to Strike Plaintiff's Response as untimely. Doc. 64.  By separate order, the Court granted Defendants' Motion to Strike.

Complaint brings nineteen claims against Defendants alleging violations of the Individuals With Disabilities Act, the First Amendment of the United States Constitution, the Fourteenth Amendment of the United States Constitution, the New Mexico Human Rights Act ("NMHRA"), the New Mexico Civil Rights Act ("NMCRA"), the New Mexico Tort Claims Act ("NMTCA"), and New Mexico common law.  *Id.*  On August 29, 2025, Defendants removed Plaintiff's Complaint to this Court based on Plaintiff's alleged violations of federal statutes and the United States Constitution over which this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Doc. 1.

Relevant to the Motion before the Court, Plaintiff's Complaint brings eleven counts against Defendant City of Rio Rancho; seven counts against Defendant RRPD; eight counts against Defendants Connie Peterson and Mike McDermott; seven counts against Defendants Green, Trujillo, Maez, Lury, Geisel, Rubin, and Samuel in their official and individual capacities; and seven counts against Defendants Johnson, Stephen Smith, Theresa Smith, Montoya, Slock, DeTomasso, Bianca Fisher, and Michael Fisher in their private and third-party conspirator capacities.

## II.  <u>LEGAL STANDARDS</u>

### A.      <u>Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)</u>

Fed. R. Civ. P. 12(b)(6) provides that a party may assert by motion the defense of failure to state a claim upon which relief can be granted.  In deciding a motion to dismiss premised on Rule 12(b)(6), the Court accepts the factual allegations in the complaint as true and views them in the light most favorable to the plaintiff.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  While the facts in the complaint need not be detailed, they must be sufficient to allow the Court to draw "the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.* (internal quotation marks and citation omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration, internal quotation marks, and citation omitted).  Indeed, "[c]onclusory allegations are not entitled to the assumption of truth." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  *Twombly,* 550 U.S. at 570.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 678.  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted).  A court will not construe a plaintiff's pleadings "so liberally that it becomes his advocate."  *Bragg v. Chavez*, 2007 WL 5232464, at *25 (D.N.M. Aug, 2, 2007).

In deciding a motion to dismiss challenging the legal sufficiency of a complaint, the Court generally must exclude extraneous material or convert the motion to one for summary judgment. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017).  "A district court may, however, consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Id.* (internal quotation marks and citation omitted).  Moreover, the Court may take

4

judicial notice of its own files and records in deciding this type of motion. *Tellalabs, Inc. v. Makor Issues & Rts.*, 551 U.S. 308, 322 (2007); *see Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006). Judicial notice of court filings is particularly helpful in situations where a motion to dismiss invokes preclusion doctrines. *See, e.g.*, *Nichols v. Danley*, 266 F. Supp. 2d 1310, 1312 (D.N.M. 2003).

### B.    **Plaintiff's *Pro Se* Status**

Plaintiff's filings were prepared without the assistance of counsel. Although Plaintiff must nevertheless comply with the fundamental rules of procedure, *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994), it has long been the rule that pro se pleadings are construed with a greater degree of liberality than those of a trained attorney, *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction. *Id.* at 1110. However, it is inappropriate for a court to assume the role of an advocate and read into a complaint for facts or legal theories that are simply not present there. *Id.*; *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("[T]he court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues.").

The burden is on the plaintiff to frame a complaint that contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 663, 678 (quoting *Twombly*, 550 U.S. at 570). A court cannot assume facts or make connections on a pro se plaintiff's behalf because he "requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall*, 935 F.2d at 1110; *but see*

*Kay v. Bemis*, 500 F.3d 1214, 1217 (10ᵗʰ Cir. 2007) ("Dismissal of a *pro se* complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.") (citation modified); *see also Curtis Ambulance of Florida, Inc. v Board of County Comm'n of the County of Shawnee, Kansas,* 811 F.2d 1371, 1375 (10ᵗʰ Cir. 1987) ("A complaint should not be dismissed for failure to state a claim unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

  **C.**  **Supplemental Jurisdiction**

  Some of the claims asserted in Plaintiff's Complaint arise under federal law, while others arise under state law.  As diversity of citizenship is not alleged in this case, Plaintiff's state-law claims are before this Court only by virtue of the supplemental jurisdiction conferred by 28 U.S.C. § 1367(a).  "The district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367](a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Before doing so, however, the Court must consider whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction over the state-law claims.  *See Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10ᵗʰ Cir. 1995).  In this case the Court concludes that these factors weigh in favor of retaining jurisdiction because Plaintiff's state-law claims are closely intertwined with his federal claims, rely on the same set of facts, and are subject to disposition based on clearly established law.  Hence, the Court elects to exercise supplemental jurisdiction over Plaintiff's state-law claims and resolve all of the claims addressed in Defendants' Motion.

### III.  **ALLEGED FACTS**

Plaintiff's Complaint contains the following allegations.

In 2024-2025 Plaintiff's son was enrolled at Enchanted Hills Elementary School in Rio Rancho, New Mexico, and subject to a Behavior Intervention Plan ("BIP") based on Attention Deficit Hyperactivity Disorder ("ADHD").  Doc. 6 at 3,  ¶¶ 132-37.  Plaintiff saw an advertisement in the school's email system for "4th Grade Basketball Program." *Id.* at 3, 4-5, ¶¶ 77, 145-51.  Plaintiff reached out to the City of Rio Rancho's Youth Basketball Director Lorenzo Green to inquire about rules for signing up his son in the basketball program and did so shortly thereafter.  *Id.* at 3, ¶¶ 78-79.  Plaintiff's son was "unfairly" placed on a "B" team.  *Id.* at 3 at ¶ 80.  Plaintiff volunteered as an assistant coach at the beginning of the season.  *Id.* at 3, ¶ 81.  Plaintiff became concerned about the "discriminatory nature" of the league and was "openly critical" of the league to league administrators.  *Id.* at ¶¶ 82-83.  Director Green did not allow Plaintiff to coach his son's team.  *Id.* at ¶ 84.  Plaintiff's son's team lost their first game 46-2 against "a hand-picked all-star team which broke league rules."  *Id.* at ¶ 85.

In December 2024, Plaintiff met with Vice Principal Steven Herrera of Enchanted Hills Elementary regarding his concerns of discrimination by the basketball league and Plaintiff was told that the school was not involved in the City's youth basketball league.  *Id.* at 3 at ¶ 89, 5 at ¶¶ 160-64.  Plaintiff also attempted to contact Defendant RRPS Superintendent's Office and Athletic Director Todd Resch and received no response.  *Id.* at ¶¶ 165-68.  On January 8, 2025, Plaintiff filed a complaint against the basketball league administrators with the City of Rio Rancho.  *Id.* at ¶ 86.  On January 14, 2025, Plaintiff filed a Writ of Mandamus in the Second

Judicial District Court accusing the City of Rio Rancho of misconduct and alleging the Cleveland Storm team of cheating.[5]  *Id.* at ¶ 87.

Defendants, both state and private actors, began conspiring against Plaintiff by soliciting and making "false accusations" about Plaintiff.  *Id.* at ¶¶ 90-95.  Defendants created a "false hoax that, because of Plaintiff's white minority race, he was acting and threatening other black and Latino league coaches, parents, and players, primarily on the Storm team."  *Id.*  On February 15, 2025, after Plaintiff's attendance of two league games, Defendants conspired to accuse Plaintiff of the "false race hate crime hoax."  *Id.*  After basketball games on February 15, 2025, Defendants Connie Peterson[6] and Noah Trujillo[7] solicited emails and texts from individual Defendants to form a pretext to remove Plaintiff and his son from the basketball league.  *Id.* at ¶¶ 96-97.  On February 17, 2025, Defendant Mike McDermott[8] sent Plaintiff a text banning him from the McDermott Athletic Center ("MAC") based on Plaintiff's alleged misconduct at league games.[9]  *Id.* at ¶¶ 98, 114-15.  On February 18, 2025, Defendants Peterson and Trujillo met with Defendants Matt Geisel[10] and Josh Rubin[11] to discuss banning Plaintiff from league practices and

---

[5] Plaintiff filed an *Emergency Petition For Writ of Mandamus* filed in the State of New Mexico, County of Bernalillo, Second Judicial District Court, Case No. D-202-CV-2025-00350.  On January 24, 2025, the Second Judicial District Court denied and dismissed Plaintiff's *Emergency Petition for Writ of Mandamus* on the basis of improper venue.  On June 30, 2025, the Court of Appeals for New Mexico affirmed the district court's dismissal.  *See St. Louis Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that federal courts may take notice of proceedings in other courts, both within and outside of the federal judicial system).

[6] Connie Peterson is identified as the City of Rio Rancho's Parks and Recreation Director.  Doc. 6 at 2.

[7] Noah Trujillo is identified as the City of Rio Rancho's Parks and Recreation Deputy Director.  Doc. 6 at 2.

[8] Mike McDermott is identified as the Director of McDermott Athletic Center ("MAC").  Doc. 6 at 2.

[9] Plaintiff alleges that the MAC is a city-owned facility.  Doc. 6 at 3, ¶¶ 111-12.  Plaintiff is incorrect.  *See* https://www.themacsports.com/about (describing MAC as family-owned and operated since 2016).  A court "is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."  *Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006) (quotation omitted).

[10] Matt Geisel is identified as the City of Rio Rancho's City Manager.  Doc. 6 at 2.

[11] John Rubin is identified as the City of Rio Rancho's City Attorney.  Doc. 6 at 2.

from the MAC and to discuss employing Defendant Lawrence Samuel to open a criminal investigation of Plaintiff "in order to silence his public criticisms." *Id.* at ¶¶ 99-102, 105-07. Defendant Samuel recorded the meeting on his lapel camera. *Id.* at ¶¶ 103-04.  On February 18, 2025, Defendant Torenzo Johnson[12] sent an email to Defendant McDermott about the "fake incident" that occurred at the league games on February 15, 2025.  *Id.* at ¶¶ 108-109.  Defendant Samuel contacted Plaintiff and "warned him of further participation at league games and practices." *Id.* at ¶ 110.  On February 19, 2025, Defendant Samuel "trespassed Plaintiff" at the MAC based on Defendant McDermott falsely reporting Plaintiff's misconduct at leagues games and also at the MAC. *Id.* at 3-4, ¶¶ 111-15.  Plaintiff and his son were effectively banned from league participation when Plaintiff was banned from the MAC.  *Id.* at 4, ¶ 117.

Defendant Samuel cleared Plaintiff of any wrongdoing.  *Id.* at ¶ 118.  Plaintiff requested public documents. *Id.* at ¶ 119.  On May 22, 2025, Plaintiff filed more complaints against the league administrators with the City of Rio Rancho with no response. *Id.* at ¶ 120.  Plaintiff filed multiple requests for action to be taken by the City of Rio Rancho with no response. *Id.* at ¶ 121. Plaintiff sent settlement demand letters to the City of Rio Rancho and Defendant RRPS with no response. *Id.* at ¶ 122-23.  Defendant RRPD denied any involvement in the events described. *Id.* at ¶ 123.  On June 16, 2025, Plaintiff sent a notice of his lawsuit notice via email to all of the individual Defendants with no response.  *Id.* at ¶ 124.

---

[12] Torenzo Johnson is identified as a Head Coach of the Visa Grande Fourth Grade Youth Basketball Team.  Doc. 6 at 2.

## IV.    ARGUMENTS AND ANALYSIS

### A.    Federal Claims

Plaintiff's Complaint alleges federal Constitutional free speech and equal protection

claims against "Defendants 4-11 (in their individual capacities),"[13] Defendants "12-21 (private

actors),"[14] and Defendant City of Rio Rancho pursuant to 42 U.S.C. § 1983 as follows:

(1) Count VII - Violation of Free Speech Rights; (2) Count VIII - Retaliation for Protected

Speech; (3) Count IX – Conspiracy to Violate Free Speech Rights; (4) Count X – Free Speech

Retaliation (Monell Claim); and (5) Count XV - Violation of Equal Protection on the Basis of

Race.  Doc. 6 at 11-14, 16.  Plaintiff alleges that Defendants 12-21, while not government

officials, knowingly acted in coordination with state actors to advance the retaliatory scheme by

providing false statements and supporting exclusionary measures thereby rendering their actions

attributable to the state under the joint action doctrine.  *Id.* at 11-13, 16.

In support of his federal Constitutional free speech and equal protection violations against

Defendants 4-11 and 12-21, Plaintiff incorporates additional factual allegations presented in

Counts IV and XII of his Complaint against Defendants City of Rio Rancho and RRPD pursuant

to the NMCRA.  In Count IV, Plaintiff alleges in relevant part:

> Plaintiff engaged in multiple acts of protected expression, including: (1) publicly
> criticizing the Rio Rancho Parks and Recreation Department's youth basketball
> league; (2) filing formal IPRA requests for public records regarding the youth
> basketball league; (3) filing official City of Rio Rancho complaints against the
> defendants on January 8, 2025; and (4) filing a Writ of Mandamus in state court on
> January 14, 2025, seeking judicial enforcement of transparency and fairness in the
> youth basketball league.  . . .

---

[13] Plaintiff's Complaint names Defendants 4-11 in both their official and individual capacities.  Doc. 6 at 1.  However, in Counts VII, VIII, IX, and XV of Plaintiff's Complaint, he asserts federal constitutional claims against them only in their individual capacities.

[14] Defendant 21 is identified as Bobbie Martinez.  Doc. 6 at 2.  Defendant Martinez is represented by separate counsel and Plaintiff's claims against her are addressed separately.

These efforts were targeted at exposing the City's misuse of public programs and discriminatory practices affecting Plaintiff's son and other children.

The public records show that, in response to this protected speech, Defendants City of Rio Rancho and the Rio Rancho Police Department engaged in a coordinated retaliatory campaign.

This included removing him as an assistant coach of his son's team, soliciting and promoting false complaints from all of the private defendants accusing Plaintiff of a race based hate crime due to his race, excluding Plaintiff from league practices and city-owned facilities, opening up a baseless criminal investigation, and using police authority to threaten or punish Plaintiff without lawful justification. . . .

Peterson took the knowingly false emails and texts she had solicited from the private defendants 13-21 to a meeting on February 18, 2025 with Geisel and Rubin. . . .

. . .

The incorporated exhibits show that defendants 4-21 were having internal discussions with each other all season and sharing the information that Plaintiff had been publicly critical of the Cleveland Storm team and asking public officials to remove their team from the league for league violations.

In response the Storm coach and parents, defendants 14-21 coordinated a vicious campaign with the City of Rio Rancho defendants to knowingly submit false complaints alleging Plaintiff of committing race based hate crimes which were later disproved by defendant Samuel's police report.

Defendant 13 also coordinated with the City of Rio Rancho Defendants and Defendant 12 to make further knowingly false race hate crimes against Plaintiff to justify the bans, which were later all discredited.

Plaintiff has also incorporated exhibits, which shows Peterson soliciting emails and texts regarding the false race hate crime allegations from the private defendants 13-21.  Those exhibits show her acknowledging she was going to take them to show them to Geisel and Rubin in the meetings.  Peterson even suggests that Geisel and Rubin were encouraging her solicitation of the emails.

. . .

These actions were undertaken in direct response to Plaintiff's speech and were intended to silence him, remove him from public view, and prevent further exposure of city misconduct.  City officials also solicited false complaints to discredit Plaintiff and create pretext for retaliation. . . .

11

Doc. 6 at 8-10.[15]  In Count XII, Plaintiff alleges that:

. . .

As set forth in Count 4, Plaintiff was subjected to a coordinated campaign of exclusion, retaliation, and public defamation by officials from the City of Rio Rancho and the Rio Rancho Police Department following his constitutionally protected complaints about league discrimination and City misconduct.

. . .

Defendants 12-21, acting in concert with City officials, participated in the fabrication and promotion of false race-based accusations specifically because

---

[15] Plaintiff cites numerous exhibits listed on "*Exhibit List A* – (In support of complaint)."  Doc. 6 at 8, ¶¶ 285, 294, 296, 301, 309, 334, 342, 345, 352, 361, 372, 378.  *Exhibit List A* lists but does not attach any actual exhibits.  Plaintiff's cited list of exhibits includes:

| | |
|---|---|
| Exhibit 1k – | IPRA Request Confirmation - 12/18/2024 |
| Exhibit 4c – | Plaintiff's Complaint to Geisel about Peterson, Green, Trujillo - 1/8/2025 |
| Exhibit 4e – | Peterson Texts w/Cleveland Storm Parent Theresa Smith - 1/18/2025 and 2/17/2025 |
| Exhibit 4f – | Peterson Texts w/Coach Torenzo Johnson - 2/15/2025 |
| Exhibit 4g – | Peterson Text w/ Melissa Franklin - 1/14/2025 |
| Exhibit 4h – | Peterson Ban Letter to Plaintiff - 2/19/2025 |
| Exhibit 4j – | Plaintiff's email response to Ban Letter - 2/19/2025 |
| Exhibits 7a - | Maez Complaint to Geisel and Rubin about Plaintiff - 1/11/2025 |
| Exhibits 7b - | Maez Complaint to Geisel and Rubin about Plaintiff - 1/11/2025 |
| Exhibits 7c - | Maez Complaint to Geisel and Rubin about Plaintiff - 1/11/2025 |
| Exhibit 8a - | Lury's Complaint to Geisel and Rubin about Plaintiff - 12/14/2024 |
| Exhibit 8b - | Lury's Complaint to Geisel and Rubin about Plaintiff - 1/18/2025 |
| Exhibit 8c - | Lury's Complaint to Geisel and Rubin about Plaintiff - 2/15/2025 |
| Exhibit 11a - | Samuel's Police Report Clearing Plaintiff - 2/19/2025 to 3/12/2025 |
| Exhibit 11b - | Abernathy's Police Report Clearing Plaintiff - 2/19/2025 to 3/12/2025 |
| Exhibit 11c - | Plaintiff's returned call to Samuel - 2/18/2025 |
| Exhibit 11d - | Samuel's MAC Facility Trespass Notice to Plaintiff - 2/19/2025 |
| Exhibit 11e - | Plaintiff's Complaint to Geisel and Rubin about Samuel - 5/22/2025 |
| Exhibit 12a - | Johnson's Email to McDermott about Plaintiff - 2/19/2025 |
| Exhibit 12b - | McDermott Ban Text to Plaintiff - 2/17/2025 |
| Exhibit 13a - | Johnson's Text to Peterson about Plaintiff - 2/15/2025 |
| Exhibit 13b - | Johnson's Email to McDermott about Plaintiff - 2/18/2025 |
| Exhibit 15a - | Theresa Smith's Email to Peterson about Plaintiff - 1/11/2025 |
| Exhibit 16a - | Melissa Montoya Franklin's Email to Peterson about Plaintiff - 1/11/2025 |
| Exhibit 17a - | Ana Kuny Slock's Emails to Peterson about Plaintiff - 2/17/2025 |
| Exhibit 17b - | Plaintiff's Notice of Lawsuit to Slock – 6/16/2025 |
| Exhibit 18a - | Raquel DeTomasso's Emails to Peterson about Plaintiff – 2-17-2025 |
| Exhibit 19a - | Bianca Fisher's Emails to Peterson about Plaintiff – 2/17/2025 |
| Exhibit 20a - | Michael Fisher's Emails to Peterson about Plaintiff – 2/15/2025 |
| Exhibit 21a - | Bobbie Martinez's Emails to Peterson about Plaintiff – 2/16/2025 |
| Exhibit 23a - | Kurt Viller's Text to Plaintiff (Conspiracy) |
| Exhibit 23c - | Transcript of Recorded Meeting Between Petrson, Trujillo, and Samuel – 2/18/2025 |
| Exhibit 23e - | Melissa Pitts Email of Sent Surveillance Videos to Plaintiff – 3/14/2025 |

> Plaintiff is a white male who publicly criticized a league administered by persons of color and individuals politically aligned with City officials.
>
> As a white person, Plaintiff is a minority race in New Mexico. His exclusion and punishment reflect unlawful discrimination on the basis of race in violation of constitutional protections.
>
> These actions demonstrate that Plaintiff was treated differently than similarly situated residents based on his race, and that race was a motivating factor in the Defendants' decision to ban and retaliate against him.

Doc. 6 at 14-15. In Count X, Plaintiff alleges that the foregoing facts:

> show that City Manager Matt Geisel, acting as the final policymaker and head of the executive branch ratified and directed this retaliatory conduct. He was briefed on the fabricated complaints, received numerous complaints from Plaintiff, and personally instructed Peterson and Rubin to take steps to silence and remove Plaintiff from public programs and facilities.

Doc. 6 at 13, ¶¶ 496-99.

### 1.    Defendants' Motion

### a.    Official Capacity Claims

In their Motion, Defendants first argue that Plaintiff's "official capacity" claims against Defendants 4-11 (Peterson, Green, Trujillo, Maez, Lury, Geisel, Rubin, and Samuel) are redundant and should be dismissed.[16] Doc. 10 at 7. Defendants argue that a claim against a municipal officer in his or her "official capacity" under § 1983 is the very same thing as a claim against the municipality itself. *Id.* Here, Defendants argue, Plaintiff has named the City of Rio Rancho and the RRPD as Defendants alleging violation of free speech and retaliation claims against them. *Id.* at 8. As such, individuals being named in their "official capacity" is redundant. *Id.*

---

[16] *See* fn. 13, *supra.*

13

b.        **Speech Violations**

Defendants next argue that Plaintiff's § 1983 speech violation claims against all of the individual Defendants should be dismissed for failure to state a claim or, in the alternative, as a matter of law under the doctrine of qualified immunity.  Doc. 10 at 12-18; Doc. 44 at 6-7. Defendants argue that their Motion assumes without conceding that Plaintiff was a "volunteer-employee" with the right to speak out, as a citizen, on matters of public concern so long as the employee's speech "does not unduly impede the government's interest, as employer, in the efficient performance of the public service it delivers through its employees."  *Id.*  Defendants argue that the Court must determine on the basis of "the content, form, and context" whether Plaintiff was speaking "as a citizen upon matters of public concern," or alternatively "as an employee upon matters only of personal interest."  *Id.*  Defendants argue that "if the employee" did speak out on a matter of public concern, then the Court must balance the strength of the employee's First Amendment interest against the strength of the countervailing governmental interest.  *Id.*  Defendants argue that if the Court determines that the public employee's First Amendment interests in speaking out outweigh a legitimate governmental interest, the plaintiff-employee must show that the protected expression was a substantial or motivating factor in the adverse employment decision.  *Id.*

Applying these standards, Defendants argue that Plaintiff's Complaint wholly lacks sufficient detail as to the form, context, or substance of the Plaintiff's speech, other than to say he generally engaged in "public criticism of the league's discriminatory practices."  *Id.* Defendants argue it is unclear whether Plaintiff's speech was aimed at his son's placement on a particular basketball team, the league selection rules for the placement of players on various teams, the league's failure to provide its participants with reasonable accommodations for

14

participants with alleged disabilities, or a perceived obligation on the league's part to make the various teams equivalent to one another in depth and skill.  *Id.*  Defendants argue that it is reasonable for the Court to infer from Plaintiff's Complaint that Plaintiff engaged in disruptive and threatening conduct and that it is fair for the Court to consider whether the league, fellow parents, and volunteer coaches had a countervailing interest in ensuring that participant players could play in the league free of disruption from disgruntled parents.  *Id.*

Defendants argue that qualified immunity should apply because, even if the Court were prepared to accept that Plaintiff engaged in speech that implicated a significant public interest, it is not reasonable to conclude that any of the individual City officials, police officers, volunteer coaches, or fellow league parents were or could have been on notice that Plaintiff's alleged speech amounted to a clearly established right.  *Id.*

Defendants argue that Plaintiff also has failed to allege sufficient facts to meet the elements required for retaliation of protected speech.  *Id.*  Defendants argue that Plaintiff's Complaint cites "public criticism" and a failure on the part of City officials to respond, and merely "incants categories and vague examples pertaining to what Plaintiff claims is protected speech without any degree of particularity or precision."  *Id.*  Defendants argue that Plaintiff has not alleged a cognizable injury.  *Id.*  Instead, Plaintiff claims that Defendants' retaliatory animus caused him to lose his position as a volunteer assistant coach, to be banned from the MAC, and to be subjected to a "hoax" investigation for which he was never charged.  *Id.*  Defendants argue that viewing the well-pled allegations in a light most favorable to Plaintiff, the Complaint only alleges a *de minimis* injury which does not support a retaliation claim.  *Id.*  Defendants further argue that even if the Court assumes Plaintiff has sufficiently pled allegations to show Defendants possessed retaliatory animus against him for his supposed civic engagement, Plaintiff

has not alleged, with any well-pled facts, an absence of probable cause for any adverse action taken by the league, much less one that caused a supposed injury to Plaintiff. *Id.*

Defendants argue that Plaintiff's conspiracy claims should be dismissed because Plaintiff's allegations are formulaic and conclusory and Plaintiff has failed to plead well-pled facts to support the supposition that City officials and private defendants acted in concert, with intent and an agreement, to deprive Plaintiff of a clearly-established right. Doc. 10 at 21-22.

Finally, Defendants argue that Plaintiff's supervisory and municipal liability claims related to his alleged speech violations should be dismissed with prejudice. Doc. 10 at 22-24. Defendants argue that the Supreme Court has made clear that "vicarious liability is inapplicable to Bivens and § 1983 suits" and that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 23-24 (citing *Iqbal*, 556 U.S. at 676). Here, Defendants argue that Plaintiff's allegations that Defendants Geisel and Rubin "ratified" or "directed" action by subordinates are conclusory and fail to show that either of them personally participated in, or deliberately intended, a constitutional violation. *Id.* Defendants further argue that Plaintiff's municipal liability claim against the City of Rio Rancho also fails as a matter of law because Plaintiff's Complaint fails to identify a formal policy, widespread custom, or deliberate decision by a final policymaker that was the "moving force" behind the alleged constitutional injury. *Id.*

### c.    **Equal Protection**

Defendants argue that Plaintiff's Complaint alleging an equal protection violation wholly fails to allege facts sufficient to state a plausible claim because it is void of allegations establishing disparate treatment among comparable class members or facts suggesting discriminatory intent beyond speculation. *Id.* at 18-19.

16

### 2.      Plaintiff's Response

In Response, Plaintiff argues that Defendants' Motion relies on contested factual assertions outside the pleadings and ignores numerous factual allegations in the Complaint that must be accepted as true.[17]  Doc. 22 at 3.

### 3.      Defendants' Reply

In Reply, Defendants restate their arguments and contend that Plaintiff's Response does not address any of the arguments and authorities raised in their Motion.  Doc. 44.

### B.      42 U.S.C. § 1983 and Qualified Immunity

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert acts by government officials acting under color of law that result in a deprivation of rights secured by the United States Constitution. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988).  There must be a connection between official conduct and violation of a constitutional right.  Conduct that is not connected to a constitutional violation is not actionable under Section 1983. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006).  Plaintiff must allege some personal involvement by an identified official in the alleged constitutional violation to succeed under § 1983.  *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).  In a Section 1983 action, it is particularly important that a plaintiff's complaint "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in the original). Generalized statements that defendants caused the deprivation of a constitutional right, without plausible supporting factual allegations, do not state any claim for relief.  *Id.*

---

[17] *See* fns. 2, 3 and 4, *supra.*

In order to survive a Rule 12(b)(6) motion to dismiss a § 1983 claim, a plaintiff must allege "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia." *Summum v. City of Ogden,* 297 F.3d 995, 1000 (10th Cir. 2002) (quotation omitted).

Where a litigant seeks to hold a private actor accountable as a state actor for constitutional deprivations, the Tenth Circuit has applied various analyses and referred to them as the "nexus test," the "public function test," the "joint action test," and the "symbiotic relationship test."[18]  *Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013) (citing *Johnson v. Rodrigues,* 293 F.3d 1196, 1202–03 (10th Cir. 2002) (citing *Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442 (10th Cir.1995))).  The Tenth Circuit has required plaintiffs seeking to assert § 1983 claims under a joint-action theory to show that the "private party is a 'willful participant in joint action with the State or its agents.' " *Gallagher,* 49 F.3d at 1453 (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)).  A plaintiff must "present facts tending to show agreement and concerted action" between the private citizen and state officials.  *Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000) (citing *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983)).  By contrast, a joint action claim under § 1983 will not lie where "the record indicate[s] that the police officers had made an independent decision to make the challenged arrest." *Gallagher*, 49 F.3d at 1454; *Carey v. Continental Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir. 1987) (joint action test not met where record contained no evidence that alleged

---

[18] Here, Plaintiff asserts state action based on the joint action doctrine.  Doc. 6 at 12, ¶ 464.

unconstitutional arrests "resulted from any concerted action, whether conspiracy, prearranged plan, customary procedure, or policy that...allowed a private party to exercise state power"); *Lee v. Town of Estes Park, Colo.*, 820 F.2d 1112, 1115-17 (10th Cir. 1987) (Tenth Circuit declined to apply joint action doctrine "where a private party is simply reporting suspected criminal activity to state officials who then take whatever action they believe the facts warrant").  In applying this test, some courts have adopted the requirements for establishing a conspiracy under Section 1983.  These courts conclude that "[a] requirement of the joint action charge . . . is that both public and private actors share a common, unconstitutional goal." *Gallagher*, 49 F.3d at 1454 (quoting *Cunningham v. Southlake Ctr. For Mental Health, Inc.,* 924 F.2d 106, 107 (9th Cir. 1991)).

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable persons would be aware.[19]  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Under the Tenth Circuit's two-part test for evaluating qualified immunity, the plaintiff must show (1) that the defendant's conduct violated a constitutional or statutory right, and (2) that the law governing the conduct was clearly established when the alleged violation occurred.  *Baptiste v. J.C. Penney Co.,* 147 F.3d 1252, 1255 (10th Cir. 1998); *accord Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998).  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Anderson v. Creighton*, 483 U.S.

---

[19] Defendants assert that their qualified immunity motion to dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction). However, a qualified immunity defense does not implicate the subject matter jurisdiction of the Court, and a motion to dismiss asserting the defense is properly brought pursuant to Fed. R. Civ. P. 12(b)(6). *See Taylor v. Zumwalt*, 2005 WL 8163606, at *1 fn. 2 (D.N.M. Oct. 14, 2005).

635, 640 (1987).  Unless both prongs are satisfied, the defendant will not be required "to engage in expensive and time consuming preparation to defend the suit on its merits."  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

The Court is not required to address the two prongs of the test in order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  The Supreme Court's decision in *Pearson* permits courts to grant qualified immunity without first deciding whether a constitutional violation occurred so long as the right claimed to be violated was not clearly established.  *Id.*  The right that is alleged to have violated must be "clearly established" not just as a general proposition (for example, in the way the right to free speech is clearly established), but "in a more particularized . . . sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right."  *Anderson*, 483 U.S. at 640.  Stating the right too broadly would destroy the balance that the Supreme Cout has sought to establish "between the interests in vindication of citizens' constitutional rights and . . . public officials' effective performance of their duties by making it impossible for officials reasonably to anticipate when their conduct may give rise to liability for damages."  *Id.* at 639.  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  Qualified immunity therefore protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The procedural posture of the qualified-immunity inquiry may be critical.  Because they turn on a fact-bound inquiry, "qualified immunity defenses are typically resolved at the summary judgment stage" rather than on a motion to dismiss.  *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).  "Asserting a qualified immunity defense via a Rule 12(b)(6) motion ... subjects the

defendant to a more challenging standard of review than would apply on summary judgment."

*Id.* (internal quotation marks omitted).  On a motion to dismiss, "it is the defendant's conduct *as*

*alleged in the complaint* that is scrutinized for [constitutionality]."  *Behrens v. Pelletier*, 516 U.S.

299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996).  "Although qualified immunity defenses are

typically resolved at the summary judgment stage, district courts may grant motions to dismiss

on the basis of qualified immunity."  *Thomas,* 765 F.3d at 1194.  The court uses the same

standard in evaluating dismissals in qualified immunity cases as to dismissals generally.  Fed. R.

Civ. P. 12(b)(6); *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007).

When a defendant asserts qualified immunity at the motion to dismiss stage, the plaintiff "must

allege facts sufficient to show (assuming they are true) that the [1] defendant[ ] plausibly violated

their constitutional rights, and that [2] those rights were clearly established at the time."

*Robbins*, 519 F.3d at 1249.  "If the plaintiff fails to satisfy either part of the two-part inquiry, a

court must grant the defendant qualified immunity." *Grissom v. Roberts*, 902 F.3d 1162, 1167

(10th Cir. 2018).

### 1.    State Actor Defendants 4-11

### a.    Official Capacity Claims

Plaintiff's official capacity claims against Defendants Peterson, Green, Trujillo, Maez,

Lury, Geisel, Rubin, and Samuel are duplicative of Plaintiff's claims against the City of Rio

Rancho and RRPD.[20] [21]  *See Rowell v. Bd. of Cnty. Comm'rs of Muskogee Cnty.,* 978 F.3d 1165,

1175 (10th Cir. 2020) ("An official capacity claim under § 1983 is the same as a claim against a

---

[20] Plaintiffs relies on the same set of facts for both the State law NMCRA claims against Defendant City of Rio Rancho and RRPD in Counts IV, V, VI, XII, XIII and XIV and the federal Constitutional claims against the individual Defendants.

[21] *See* fn. 13, *supra.*

municipality ...."); *Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015) (observing that official capacity claims are equivalent to claims against the local governmental unit of which the officer is an agent) (citations omitted); *Vondrak v. City of Las Cruces*, 2009 WL 1300945, at *2 (D.N.M. Mar. 30, 2009) ("[A] § 1983 action appropriately is pleaded against a municipality either by naming the municipality itself or by naming a municipal official in his or her official capacity. Naming either is sufficient. Naming both is redundant.") (citations omitted) (quoting *Stump v. Gates*, 777 F. Supp. 808, 816 n.3 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993)). Duplicative official capacity claims are routinely dismissed. *Vondrak*, 2009 WL 1300945, at *2 n.1 ("There is no sound reason to allow the official-capacity claims to remain, given the case law indicating that, where the municipality is already named as a defendant, such claims are redundant."); *Doe v. Farmington Mun. Schs.*, 2022 WL 9956170, at *2 (D.N.M. Oct. 17, 2022) (observing that motions to dismiss duplicative official capacity claims "are routinely granted"); *Browder v. City of Albuquerque*, 2014 WL 12487667, at *3 (D.N.M. Mar. 13, 2014) ("[I]t is common for Plaintiffs to name both the municipality and officer in an official capacity as Defendants.  In these cases, courts routinely dismiss official capacity claims as redundant of the claims against the municipal entity itself.").

Based on the foregoing, the Court concludes that Defendants' Motion for dismissal of claims against Defendants Peterson, Green, Trujillo, Maez, Lury, Geisel, Rubin, and Samuel in their official capacities is well taken and **GRANTED**.

b.    **State Actor Defendants 4-6[22] and 9-11[23]**

(1)    **Speech Violations – Counts VII, VIII, and IX**

The First Amendment bars government officials from retaliating against individuals for engaging in protected speech.[24] *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998).  For the First Amendment to bar the government from taking action against a speaker, the speaker's activity in question must be (1) speech and (2) protected.  *Weise v. Casper*, 593 F.3d 1163, 1168 (10th Cir. 2010).  "Criticism of government is at the very center of the constitutionally protected area of free discussion."  *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966); *see also Jenkins v. Rock Hill Loc. Sch. Dist.,* 513 F.3d 580, 588 (6th Cir. 2008) ("[T]he right to criticize public officials" is safely within that protected speech zone.").

The Tenth Circuit has stated that "[a]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Lackey v. County of Bernalillo,* 1999 WL 2461, at *3 (10th Cir. Jan. 5, 1999); *see also Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001) (same).  The Tenth Circuit has also considered the elements necessary for a retaliation claim where the governmental defendant is not the plaintiff's employer nor a party to a contract with the plaintiff.  *See Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).  Government

---

[22] Defendants Peterson, Green, and Trujillo.  Doc. 6 at 2.

[23] Defendants Geisel, Rubin, and Samuel.  Doc. 6 at 2.

[24] Defendants argue that Plaintiff has failed to provide sufficient detail as to the form, context, or substance of his speech, *i.e.,* and whether he spoke on a matter of public concern such that his speech for protected.  But that test is only applicable for claims brought by government employees. *Van Deelen*, 497 F.3d at 1156 (holding that the "public concern" test's  scope "reaches no further" beyond claims brought by public employees).  Here, there is nothing in Plaintiff's Complaint nor have Defendants provided any evidence to support that Plaintiff's limited time as a preseason volunteer assistant coach rendered him a public employee.  Nor is there evidence that Plaintiff's alleged protected speech was made while performing any duties as a volunteer coach.  The Court, therefore, considers the elements necessary for a retaliation claim where plaintiff is a private citizen.

23

retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Id.*; *see also Van Deelen v. Johnson*, 497 F.3d 1151, 1155-56 (10th Cir. 2007)); *Smith v. Maschner,* 899 F.2d 940, 949–50 (10th Cir.1990) (explaining that the third element of a retaliation claim requires that the plaintiff ultimately prove "that 'but for' the retaliatory motive," the adverse action "would not have taken place.") (citations omitted)).  In addition to the three *Worrell* elements, a First Amendment retaliation claim based on a false arrest requires a separate " 'threshold showing'—generally, a plaintiff must show a [a lack of probable cause]." *Worrell,* 219 F.3d at 1227.  "[W]hen the plaintiff alleges that the defendant's action was taken in retaliation for protected speech, our standard for evaluating that chilling effect on speech is objective, rather than subjective . . . a trivial or *de minimis* injury will not support a retaliatory prosecution claim." *Eaton v. Meneley,* 379 F.3d 949, 954–55 (10th Cir. 2004) (internal quotation omitted).

Here, Plaintiff alleges his protected speech activity included being "openly critical" of the league to league administrators; submitting IPRA requests; filing a formal complaint against the league administrators with the City of Rio Rancho; and filing a Writ of Mandamus in state district court.  As to the first activity, Plaintiff has not pled sufficient facts to substantiate he was engaged in protected speech.  For instance, Plaintiff's Complaint fails to identify where, when, or to whom Plaintiff was "openly critical," or to provide any factual detail as to the content of his criticisms, *i.e.,* whether he criticized specific city policies or laws, the league's application of

24

specific city policies or laws, the league officials generally, or made some other kind of critical comments.  Thus, in the absence of any meaningful detail, Plaintiff has not pled sufficient facts to substantiate that he was engaged in protected speech when he was "openly critical" of the league at the beginning of the basketball season.  *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to defeat a motion to dismiss)*; see also generally Harvey v. Baker*, 242 F. App'x 547, 551 (10th Cir. 2007) (finding that vague, non-specific evidence insufficient on its own to create a genuine issue of material fact with respect to any of the individual plaintiff's claims that he engaged in protected speech) (citing *Mitchell v. City of Moore,* 218 F.3d 1190 (10th Cir. 2000)); *see also, e.g., Adderly v. Ferrier,* 419 F. App'x 135, 141 n.5 (3d Cir. 2011) (holding that a retaliation claim was properly dismissed when the complaint provided "no details regarding what speech [plaintiff] was allegedly punished for"); *Bowlin v. Arkansas Dep't of Health,* 2009 WL 1286314, at *6 (E.D. Ark. May 8, 2009) (dismissing retaliation claim where the complaint provided "no details or context regarding the speech at issue").

As to the second activity, Plaintiff's request for public records is not a protected activity under the First Amendment.  "It is well-settled that there is no general First Amendment right of access to all sources of information within governmental control." *Smith*, 258 F.3d at 1178. "Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control."  *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (plurality opinion); *see also Lanphere & Urbaniak v. Colorado*, 21 F.3d 1508, 1511 (10th Cir. 1994) ("[T]here is no constitutional right, and specifically no First Amendment right, of access to government records.").  As such, Plaintiff's

25

request for public records fails to establish protected speech activity or to satisfy the first element necessary for establishing a retaliation claim against Defendants for violation of free speech rights.

The Court finds that Plaintiff's third and fourth alleged activities - filing a formal Complaint with the City of Rio Rancho against the league administrators and filing a Writ of Mandamus in state court regarding city misconduct and alleged cheating of league rules – both fall within constitutionally protected activity. *See Van Deelan*, 497 F.3d at 1156 (explaining that a private citizen exercises a constitutionally protected First Amendment right *anytime* he or she petitions the government for redress and that the "minor and questionable, along with the mighty and consequential" are all embraced) (emphasis in original)).

Under *Worrell's* second requisite, Plaintiff's Complaint must allege that Defendants' adverse actions in response to his constitutionally protected activity caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." 219 F.3d at 1212. Whether Defendants' actions had a "chilling effect" is an objective standard. *Eaton*, 379 at 954. Additionally, the standard is a rigorous one to satisfy. *Id.* at 955. "Thus, although the objective standard permits a plaintiff who perseveres despite governmental interference to bring suit, 'a trivial or *de minimis* injury will not support a retaliatory prosecution claim.'" *Id.* at 954-55 (quoting *Poole v. County of Otero*, 271 F.3d 955, 960 (10th Cir. 2001)).

Plaintiff's Complaint flounders on this element because it fails to allege facts demonstrating that his alleged suffered injuries chilled him from exercising his constitutional right to free speech such that they were more than *de minimis*. For instance, even if the Court were to assume that Plaintiff's being "openly critical" of the league amounted to protected speech and that Defendant Green did not allow him to continue as an assistant coach in response,

26

Plaintiff proceeded to file a formal complaint with the City of Rio Rancho and file a Writ of

Mandamus in state district court, both of which demonstrate that Defendant Green's alleged

adversary action had no effect on Plaintiff's ability to petition City officials and the state

judiciary with his complaints against the City basketball league.[25]  Additionally, Plaintiff's

Complaint alleges that even after having been banned from the MAC[26] and being subjected to an

alleged hoax and a sham investigation, Plaintiff persisted in voicing his concerns about the youth

basketball league by seeking public documents, filing more complaints with and making multiple

requests for action from the City of Rio Rancho, sending settlement demands to the City of Rio

Rancho and Rio Rancho Public Schools, sending notices of his intent to file a lawsuit to all of the

private Defendants, and ultimately filing the lawsuit at issue here.  Thus, Plaintiff's Complaint

fails to support that Defendants' alleged adverse actions chilled his free speech or prevented

Plaintiff from continuing to lodge complaints to the relevant authorities about the City's youth

basketball league such that he suffered more than a *de minimis* injury.  *See Smith*, 258 F.2d at

1177 (explaining that the fact the plaintiff persisted in the face of allegedly retaliatory actions

offered some evidence that the defendants' actions did not infringe upon speech); *see also*

*generally Lovern v. Edwards*, 190 F.3d 648, 655–56 (4th Cir. 1999) (parent's ban from school

property did not implicate his First Amendment rights where he "was provided ample

opportunity to air his 'corruption' allegations, both to the school board and in numerous

discussion with school officials"); *Czaplinski v. Ballard*, 2025 WL 2986832, at *4 (D. Kan.

Oct. 23, 2025) (explaining that a threat of prosecution, standing alone, may not be sufficient to

---

[25] Plaintiff's Complaint alleges that he also complained to Enchanted Hills Elementary and the Rio Rancho Public School faculty in December 2024.  Doc. 6 at 3, 5.

[26] The Court finds that this action was not taken by a state actor nor by a private actor in joint action with state officials. *See* Section IV.B.2., *infra.*

27

support a First Amendment retaliation claim where plaintiff continued to exercise First Amendment rights) (citing *How v. City of Baxter Springs, Kan.*, 217 F. App'x 787, 798 (10th Cir. 2007)); *Pierce v. Chene*, 2017 WL 3600458, at *10 (D.N.M. Feb. 1, 2017) (finding that the ban from the school grounds and the enforcement of that ban were *de minimis* because they did not interfere with the plaintiffs' ability to voice their complaints to the governing council, the school board, or the PED); *Medina v. Charbagi*, 2014 WL 12789013, at *5 (D.N.M. Aug. 14, 2014) (finding that criminal complaint filed against plaintiff was *de minimis* injury where plaintiff continued to exercise First Amendment rights by filing his civil complaint).

Moving then to the third element under *Worrell*, Plaintiff's Complaint must allege facts to support that Defendants' adverse actions were substantially motivated as a response to Plaintiff's exercise of constitutionally protected conduct. Plaintiff's Complaint flounders on this element as well. As previously addressed, Plaintiff's first alleged protected activity, *i.e.,* being "openly critical" of the league at the beginning of the season, without more, is insufficient to demonstrate protected activity. Plaintiff's allegation, therefore, that Defendant Green did not allow him to continue coaching as a result is conclusory, speculative, and without factual support. Moreover, even if so, Plaintiff's Complaint fails to support that this alleged adverse action caused more than a *de minimis* injury or interfered with his ability to exercise his protected speech.

As for Defendants' other alleged retaliatory actions, *i.e.,* soliciting false emails, banning Plaintiff from the MAC,[27] and threatening a sham criminal investigation, Plaintiff's Complaint clearly tethers these adverse actions to Plaintiff's attendance at two league games on February 15, 2025, and not to his protected speech activity.[28] Plaintiff's Complaint alleges that it

---

[27] *See* fn. 13 and 26, *supra*.

[28] Speech for First Amendment purposes includes "the spoken or written word" as well as "conduct [that] possesses sufficient communicative elements." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Plaintiff does not argue, however,

was *after* his attendance at games on February 15, 2025, that Defendants "created a false hoax that, because Plaintiff's white minority race, he was acting and threatening other black and Latino league coaches, parents, and players, primarily on the Storm team."  Doc. 6 at 3, ¶¶ 92-93.  Plaintiff's Complaint further alleges that he was aware that his being banned from the MAC shortly thereafter on February 17, 2025, and being "trespassed" at the MAC on February 19, 2025, were the "direct result of Plaintiff's misconduct at the league games, and also at the MAC center."  *Id.* at 4, ¶¶ 114-15.  Thus, while Plaintiff disputes that he engaged in threatening behavior at the February 15, 2025, league games and believes Defendants conspired and fabricated a "hoax" as a pretext for silencing Plaintiff's criticisms of the league, Plaintiff's Complaint nonetheless fails to allege any specific facts that directly link Defendants' alleged adverse actions to Plaintiff's protected speech, *i.e.,* his decision to file an official complaint about the league with the City of Rio Rancho or file his Writ of Mandamus with the state judiciary.  Instead, Plaintiff's Complaint relies on unadorned accusations and unsupported legal conclusions in his attempt to do so.  *See Griffin v. City of Artesia*, 2023 WL 5337133, *9 (Aug. 18, 2023) (unpublished) ("Although a court considering a Rule 12(b) motion must take as true a plaintiff's factual allegations, that presumption does not apply to everything a complaint alleges.  *Twombly* forbade presuming as true any legal conclusions, unadorned accusations, or perfunctory regurgitations of legal elements.").  In sum, Plaintiff's Complaint fails to allege facts sufficient to suggest that Defendants' alleged adverse actions after Plaintiff's attendance at two league games on February 15, 2025, were in retaliation for his protected speech, namely his decision to file grievances regarding the league several weeks earlier.  *Smith,* 899 F.2d at 949-50.

---

that he was engaged in any particular conduct, protected or otherwise, on February 15, 2025, but instead alleges the conduct as described by Defendants was a fabricated hoax.

29

For all of the foregoing reasons, the Court concludes that Defendants Peterson, Green, Trujillo, Geisel, Rubin, and Samuel are entitled to qualified immunity because Plaintiff's Complaint fails to allege facts sufficient to show that they plausibly violated Plaintiff's constitutional rights to free speech under the First Amendment. Further, relief can only be granted on conspiracy claims under § 1983 if the object of the conspiracy was to deny Plaintiff a federally protected right. "In order to succeed on this claim, [Plaintiff] must prove both the existence of a conspiracy and the deprivation of a constitutional right." *Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1517 (10th Cir. 1995) (citing *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990)); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Here, Plaintiff's Complaint fails to allege facts sufficient to establish the existence of any constitutional violations. As such, Plaintiff's conspiracy claim necessarily fails.

The Court, therefore, finds that Defendants' Motion is well taken and **DISMISSES WITH PREJUDICE** Plaintiff's federal Constitutional speech claims alleged against Defendants Peterson, Green, Trujillo, Geisel, Rubin, and Samuel in their individual capacities in Counts VII, VIII, and IX of Plaintiff's Complaint.

### (2)    Equal Protection Violation – Count XV

The Equal Protection Clause of the Fourteenth Amendment guarantees that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The root of equal protection "is that the state treat all those similarly situated similarly, with its central purpose being the prevention of official conduct discrimination on the basis of race or other suspect classifications. As such, equal protection only applies when the state treats two groups, or individuals, differently." *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004) (alterations, internal quotation marks, and citations omitted). In addition to

30

allegations of disparate treatment, there must also be allegations of discriminatory intent: "To sustain a claim under the Equal Protection Clause, a plaintiff must provide evidence that he was treated differently from others who are similarly situated to him, and that the acts forming the basis of the plaintiff's claim were motivated by a discriminatory purpose." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1179 (10th Cir. 2003). "Equal protection jurisprudence has traditionally been concerned with governmental action that disproportionally burdens classes of citizens," however it also recognizes "class-of-one" claims where "a public official, with no conceivable basis for his action other than spite or some other improper motive ..., comes down hard on a hapless private citizen." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215-16 (10th Cir. 2011) (internal quotation marks and citation omitted).

Here, Plaintiff's Complaint alleges, without more, that Defendants' adverse actions in response to his protected speech were undertaken on the basis of Plaintiff's race as a white person and thus a violation of Plaintiff's right to equal protection of the law. This is insufficient to state a claim. *Robbins*, 519 F.3d at 1249-50. Additionally, Plaintiff's Complaint is void of any factual allegations specific to any of the state actor Defendants, singly or jointly, to support that they treated Plaintiff differently than similarly situated individuals. *Id.; see also Burke v. New Mexico*, 696 F. App'x 325, 330 (10th Cir. 2017) ("To state a plausible § 1983 equal-protection claim, a plaintiff must allege facts indicating how each defendant was personally responsible for treating h[im] 'differently from others similarly situated.' ") (quoting *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)). Moreover, where, as here, an equal protection claim is based on an alleged First Amendment violation, the former "coalesces with the latter" and necessarily fails. *See Kempkes v. Downey,* 2008 WL 852765, at *6 (S.D.N.Y. Mar. 31, 2008) (collecting cases). "Where this is the case, the equal protection claim is dependent on the First Amendment

31

claim; in other words where the First Amendment claim has failed, the equal protection claim fails, too." *Id.; accord Gentile v. Nulty,* 769 F. Supp. 2d 573, 582–83 (S.D.N.Y. 2011).

Plaintiff's Complaint, therefore, fails to allege facts sufficient to show that any of the state actor Defendants plausibly denied Plaintiff equal protection of the law by treating him differently than similarly situated individuals based on his race.  Thus, because Plaintiff's Complaint fails to show a federal Constitutional violation, the state actor Defendants are entitled to qualified immunity on Plaintiff's equal protection claim.

The Court, therefore, finds that Defendants' Motion is well taken and **DISMISSES WITH PREJUDICE** Plaintiff's federal Constitutional equal protection claim alleged against Defendants Peterson, Green, Trujillo, Geisel, Rubin, and Samuel in their individual capacities in Counts XV of Plaintiff's Complaint.

### c.        State Actor Defendants 7 and 8 (Maez and Lury)

Plaintiff's Complaint fails to allege facts sufficient to state a 1983 claim against Defendants Brandon Maez and Elianna Lury.  The factual allegations in Plaintiff's Complaint do not mention either of these state actors by name even once and instead they are identified only as part of "Defendants 4-11."  This is insufficient to state a 1983 claim.  *Robbins*, 519 F.3d at 1249-50 (explaining it is particularly important that a plaintiff's complaint "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her.").  Further, the only action Plaintiff attributes to Defendants Maez and Lury is found in his reference to Exhibits 7a-7c, 8a-8c and identified on *Exhibit List A* as complaints they each sent to Defendants Geisel and Rubin about Plaintiff.  Doc. 6 at 10, ¶¶ 370-72 (citing Exhibits 7a-7c, 8a-8c).  This is also insufficient.  *Id.* (explaining that generalized

statements that defendants caused the deprivation of a constitutional right, without plausible supporting factual allegations, do not state any claim for relief).

The Court, therefore, finds Defendants' Motion is well taken and **DISMISSES WITH PREJUDICE** Plaintiff's federal Constitutional claims alleged against state actor Defendants Maez and Lury in their individual capacities in Counts VII, VIII, IX, and XV, for failure to state a claim.

### 2.    Private Defendants 12-20

Plaintiff's Complaint fails to allege facts sufficient to state a 1983 claim against private Defendants McDermott, Johnson, Stephen Smith, Theresa Smith, Montoya, Slock, De Tomasso, Bianca Fisher, and Michael Fisher under a theory of joint action.  To begin, other than two references to Defendant Johnson,[29] and three references to Defendant McDermott,[30] the factual allegations in Plaintiff's Complaint do not mention any of these private Defendants by name even once and instead Plaintiff identifies them only as part of "Defendants 12-21."  This is insufficient to state a 1983 claim.  *Robbins,* 519 F.3d at 1249-50 (explaining it is particularly important that a plaintiff's complaint "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her.").  Further, the only actions Plaintiff attributes to these Defendants are found in his reference

---

[29] Plaintiff's Complaint alleges that on February 18, 2025, Defendant Johnson sent Defendant McDermott an "email defaming Plaintiff about an [sic] fake incident from the league games on February 15, 2025." Doc. 6 at 3, ¶¶ 108-09. Elsewhere, Plaintiff's Complaint alleges that "Defendant 13 also coordinated with the City of Rio Rancho Defendants and Defendant 12 to make further knowingly false race hate crimes against Plaintiff to justify the bans." *Id.* at 10, ¶¶ 359-60.

[30] Plaintiff's Complaint alleges that on February 17, 2025, Defendant McDermott sent Plaintiff a text banning him from the MAC[30] and that Plaintiff was "trespassed" from the MAC on February 19, 2025, at the behest of Defendant McDermott "who was also involved in contacts with Geisel, Rubin, Peterson, and Trujillo." Doc. 6 at 3, ¶ 98. Plaintiff's Complaint further alleges that Defendant McDermott fabricated the cause for the trespass as "a direct result of Plaintiff's misconduct at the league games, and also at the MAC center." *Id.* at 4, ¶¶ 114-15.

to various exhibits identified on *Exhibit List A* as emails and/or texts they sent to Defendant

Peterson about Plaintiff. [31] [32]  Doc. 6 at 8-10.  This is also insufficient.  *Id.* (explaining that

generalized statements that defendants caused the deprivation of a constitutional right, without

plausible supporting factual allegations, do not state any claim for relief).

       Moreover, Plaintiff's allegations that Defendants 12-20 were functioning as state actors

under a theory of joint action or that there was conspiratorial joint action between Defendants

12-20 and the City of Rio Rancho are conclusory and speculative.  Here, Plaintiff alleges that

"Defendants 4-21" were sharing information amongst themselves that Plaintiff wanted public

officials to remove the Cleveland Storm team from the league for alleged league violations.[33]

Doc. 6 at 10, ¶¶ 353-55.  Plaintiff alleges the "Storm coach and parents, defendants 14-21" in

turn coordinated a "vicious campaign with the City of Rio Rancho" to knowingly submit false

complaints about Plaintiff committing "race based hate crimes."  *Id.* at ¶¶ 356-58.   Plaintiff

alleges that "Defendants 13-21" sent emails to Defendant Peterson that contained false race-

based complaints about Plaintiff's "acting and threatening" the coaches, parents, and players on

the Cleveland Storm basketball team at league basketball games.  *Id.* at 3, 10, ¶¶ 92-93, 362-63.

Plaintiff alleges the false emails were part of a coordinated campaign by "Defendants 12-21"

with the City of Rio Rancho to justify banning Plaintiff from league participation in direct

response to his speech regarding the City's discriminatory misconduct.  *Id.* at 10,  ¶¶ 356-57,

370-71.  These allegations, however, apart from *not* making clear exactly who is alleged to have

---

[31] *See* fn. 15, *supra*.

[32]  *Exhibit List A* lists but does not attach any actual exhibits.

[33] Plaintiff alleges that Cleveland Storm violated league rules because they were a "hand picked all star team."
Doc. 6 at 3, ¶ 85.

done what to whom, fail to show that Defendants 12-20 were acting in concert with state actors or shared a common goal to violate Plaintiff's constitutional rights.

For instance, that certain Defendants talked amongst themselves about Plaintiff wanting the Storm team removed from the league is insufficient to show an agreement and concerted action to violate Plaintiff's constitutional rights. *See Haynes v. City and County of Denver, Colorado*, 2006 WL 8454571, *3 (D. Colo. Mar. 31, 2006) (citing *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (explaining that it is not reasonable to infer that faculty and administrators who met during an investigation were conspiring with one another). Additionally, Plaintiff's claim of a subsequent coordinated campaign against him is conclusory and devoid of specific factual allegations in support. *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Helson, P.C.*, 956 F.3d 1228, 1235 (10th Cir. 2020) (citing *Beedle v. Wilson*, 422 F.3d 1059, 1073 (10th Cir. 2005) ("[T]he plaintiff must specifically plead facts tending to show agreement and concerted action." (internal quotation marks omitted))). Further, Plaintiff's allegation that private Defendants 13-21 sent false emails to City officials fails to support a plausible inference that state actor Defendants were acting under their influence when they were merely furnishing information. *See generally, Lee*, 820 F.2d at 1115-17 (Tenth Circuit declined to apply joint action doctrine "where a private party is simply reporting suspected criminal activity to state officials who then take whatever action they believe the facts warrant"). Indeed, while Plaintiff disputes the veracity of the emails sent by private Defendants 13-20 to Defendant Peterson, Plaintiff's Complaint nonetheless reveals their subject, *i.e.,* complaints regarding Plaintiff's threatening behavior toward the Storm coach and parents at two league games on February 15, 2025. *See id.* Finally, Plaintiff's Complaint fails to allege facts showing that any state actor Defendant who allegedly deprived Plaintiff of certain constitutional rights did so

35

under any of the private Defendants' influence or that any state actor Defendant relied upon or substituted their own judgment for theirs. Instead, Plaintiff's Complaint alleges that the alleged adverse actions were at the direction of various state actor Defendants who prevented him from serving as assistant coach, solicited false complaints from private defendants, and opened a baseless criminal investigation against him. *Id.*

Specifically as to Defendants McDermott and Johnson, Plaintiff's Complaint fails to allege facts demonstrating either of them shared a common unconstitutional goal with state actor Defendants giving rise to state action. When a plaintiff seeks to prove state action based on a conspiracy theory, "a requirement of the joint action charge . . . is that both public and private actors share a common, unconstitutional goal." *See Anaya v. Crossroads Managed Care Systems*, 195 F.3d 584, 596 (10th Cir. 1999). In such cases, "mere conclusory allegations with no factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994) (citation and quotations omitted). Here, Plaintiff alleges, without more, that Defendant Johnson "coordinated with" and Defendant McDermott was "involved in contacts with" Defendants Geisel, Rubin, Peterson, and Trujillo in submitting false emails about Plaintiff's alleged threatening behavior on February 15, 2025, and in trespassing Plaintiff at the MAC. Plaintiff's Complaint, however, fails to allege any specific facts to show that Defendants Johnson or McDermott were acting in concert with these state actor Defendants, singly or jointly, in response to Plaintiff's protected speech or in effecting a particular deprivation of Plaintiff's constitutional rights. Moreover, Plaintiff's Complaint alleges that Defendant McDermott, the owner of the MAC,[34] banned Plaintiff from the MAC for cause "as a direct result of Plaintiff's

---

[34] *See* fn. 9, *supra*.

misconduct at the league games, and also at the MAC center." Doc. 6 at 4, ¶¶ 114-25. *See generally Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164 (1978) ("This Court . . . has never held that a State's mere acquiescence in a private action converts that action into that of the State."); *see also Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 936 (1982) (explaining that purely private conduct, no matter how wrongful or discriminatory, is not actionable under § 1983). Finally, that private Defendant McDermott utilized a peace officer to enforce the ban at the MAC, of which Plaintiff had been notified, does not transform his activity into state action. *See Scott v. Hern,* 216 F.3d 897, 906–07 (10th Cir. 2000) (merely following a procedure established by state law does not transform a private party's activity into state action); *Kirksey v. Theilig,* 351 F. Supp. 727, 733 (D. Colo. 1972) (holding that self-help repossession of an automobile by a private party is not action under color of state law).

In sum, Plaintiff's Complaint fails to allege facts to support a plausible inference that private Defendants 12-20 violated Plaintiff's federal Constitutional rights under a theory of joint action with state actor Defendants. The Court, therefore, finds Defendants' Motion is well taken and **DISMISSES WITH PREJUDICE** Counts VII, VIII, IX, and XV as against private Defendants 12-20 for failure to state a § 1983 claim.

### 3.    City of Rio Rancho – Count X (Free Speech - Monell Claim)

"A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). The Court's finding that the state actor Defendants are entitled to qualified immunity because Plaintiff's Complaint fails to allege facts sufficient to show that they plausibly violated Plaintiff's federal Constitutional rights to free speech under the First Amendment necessarily vitiates Plaintiff's claim against the City of Rio Rancho.

37

The Court, therefore, finds Defendants' Motion is well taken and **DISMISSES WITH PREJUDICE** Count X as against the City of Rio Rancho for failure to state a § 1983 claim.

## C.    State Law Claims

### 1.    Counts II and XVI - Disparate Impact and Public Accommodation Discrimination Pursuant to NMHRA

Plaintiff's Complaint alleges in Count II that Defendant City of Rio Rancho[35] violated the NMHRA because it failed to adopt equitable sports team formation policies which had a disparate impact on Plaintiff's son and similarly situated children throughout the league. Doc. 6 at 6, ¶¶ 216-219. Plaintiff argues that Defendant City of Rio Rancho's practices excluded his son and similarly-situated children from equal participation, denied competitive opportunity, and subjected them to public embarrassment and stigma. *Id.*

Plaintiff's Complaint alleges in Count XVI that Defendant City of Rio Rancho and Defendant RRPD violated the NMHRA because they enforced a facility ban and criminal trespass in retaliation for Plaintiff's protected speech activity and, in part, because of his race. *Id.* at 17, ¶¶ 631-34.

Plaintiff alleges he exhausted "all claims through Claim #25-01-0021-E, and was denied Right to Sue Letter By Agent Rick Lucas."[36] *Id.* at 6, ¶¶ 228-29. Plaintiff alleges he "declared his rights to file suit to agent." *Id.*

---

[35] Plaintiff's Complaint also named Defendant RRPS in Count II. Claims against Defendant RRPS and Bonnie Martinez are addressed separately in the Court's Memorandum Opinion and Order filed concurrently herewith.

Plaintiff's Complaint also names Defendant RRPD in Count XVI. The Court, however, has determined that Defendant RRPD is not a public body pursuant to the NMHRA.

[36] Plaintiff cites Exhibits 22a-22c. Doc. 6 at 6, ¶ 229. Plaintiff's Exhibit List indicates without more:

    22a.  Plaintiff's 1st Call to NMHRA Hotline to Open Claim (1-9-25)
    22b.  1st Call From Rick Lucas, NMHRA Investigator Regarding Claim #25-01-0021-E (2-7-25)
    22c.  2nd Call From Rick Lucas, NMHRA Investigator Regarding Claim #25-01-0021-E (2-7-25)

Doc. 6 at 22.

The NMHRA prohibits unlawful discriminatory practices in the context of employment, housing, credit, and public accommodations.  NMSA 1978, §§ 28-1-7(A)-(F), 28-1-10.  Under the NMHRA, a "person claiming to be aggrieved by an unlawful discriminatory practice . . . may file with the human rights division of the labor department a written complaint that shall state the name and address of the person alleged to have engaged in the discriminatory practice[.]" NMSA 1978, § 28-1-10(A).  Although the statute states a person "may file," "the legislature intended that the grievance procedure is mandatory when unlawful discriminatory practices are alleged."  *Jaramillo v. J.C. Penney Co.*, 1985-NMCA-002, ¶ 3 (N.M. App. 1985).  To state a viable claim under the NMHRA, a plaintiff must allege facts showing that he: (1) falls within one of the statute's protected classes; (2) was subject to discrimination in one of the enumerated contexts; and (3) exhausted administrative remedies before filing suit.  *See Tafoya v. Bobroff*, 865 F. Supp. 742, 747-48 (D.N.M. 1994) ("The New Mexico Supreme Court recently and unequivocally held that a plaintiff under the [NMHRA] must exhaust his or her administrative remedies against each defendant before he or she may sue the defendant in court.") (citing *Luboyeski v. Hill*, 1994-NMSC-032, ¶ 7 (1994)).

Plaintiff's Complaint fails to demonstrate he has exhausted his administrative remedies pursuant to the requirements of NMHRA.  *See* NMSA, Section 28-1-10 (detailing grievance procedure for persons claiming to be aggrieved by an unlawful discriminatory practice that includes, *inter alia*, filing a written complaint, notice to respondent with a copy of complaint, investigation, and determination).  Instead, Plaintiff alleges, without more, that he made a call to the "NMHRA hotline" and received two phone calls from an investigator who denied Plaintiff a right to sue letter.  Doc. 6 at 6, 22.  This is insufficient to demonstrate exhaustion.  Plaintiff's

failure to exhaust the required administrative remedies is fatal to his claim. *See Luboyeski*, 1994-NMSC-032, ¶ 7.

The Court, therefore, finds Defendants' Motion is well taken and **GRANTED**. Plaintiff's Complaint against Defendant City of Rio Rancho for Disparate Impact Discrimination pursuant to the NMHRA (Count II) and against Defendant City of Rio Rancho and Defendant RRPD for Public Accommodation Discrimination (Count XVI) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

### 2.    Count III – Violation of New Mexico IPRA

Plaintiff's Complaint alleges in Count III that Defendants City of Rio Rancho, Connie Peterson, and Mike McDermott violated New Mexico IPRA. Doc. 6 at 7-8. Plaintiff alleges that he submitted lawful IPRA requests for league-related communications and records and that documents have been withheld. *Id.* In support, Plaintiff alleges that he "filed a transcript of [a February 18, 2025] meeting" recorded by Defendant RRPD in which Defendant Peterson admitted to violating IPRA law by "intentionally avoiding written documentation, including by opting for phone calls over email, to prevent the production of responsive records."[37] *Id.* (citing Exhibit 23c).[38] In further support, Plaintiff alleges he learned from his son's basketball coach, Kurt Villers, that Defendant Peterson admitted in a May 2025 communication that she was using her personal phone to conduct league business and was tired of Plaintiff "IPRA-ing" her on her work phone. *Id.* (citing Exhibit 4k).[39] Plaintiff also alleges that Defendant McDermott has

---

[37] Plaintiff states he incorporates the full contents of the original February 18, 2025, video into this Complaint by reference and is prepared to produce the original video at trial or upon the Court's request. Doc. 6 at 7.

[38] Attached to Plaintiff's Complaint is "Exhibit List A – (In support of complaint). Doc. 6 at 20-22. Exhibits are listed but not attached or otherwise provided. Exhibit 23c is identified on Plaintiff's Exhibit List as "Enchanted Hill's Basketball Coach Kurt Viller's Text to Plaintiff Admitting City Conspiracy." Doc. 6 at 22.

[39] Exhibit 4k is identified on Plaintiff's Exhibit List as "Coach Kurt Viller's Text to Connie Peterson (3-18-2025)." Doc. 6 at 20.

40

withheld communications with City officials about the youth basketball league, including discussions about banning Plaintiff from the MAC. *Id.* Plaintiff alleges that Defendant City of Rio Rancho has acknowledged Defendant McDermott's IPRA liability as a person in possession of public records. *Id.* (citing Exhibit 12a-12b).[40] Finally, Plaintiff alleges that Defendant City of Rio Rancho continues to withhold documents responsive to Plaintiff's IPRA requests. *Id.* Plaintiff alleges Defendants' noncompliance has prejudiced his ability to investigate and fully present his claims to this Court and that their actions constitute knowing and willful violations of IPRA's mandates. *Id.*

In their Motion, Defendants argue that IPRA sets forth specific, mandatory procedures for requesting and inspecting public records which include, *inter alia*, submitting a written request to the proper custodian and identifying the records sought with reasonable particularity. Doc. 10 at 10-12. Here, however, Defendants argue that Plaintiff's Complaint does not allege all requests at issue were made in writing, delivered to the proper custodian, or that his requests identified the records sought with reasonable particularity as required by law. *Id.* Defendants further argue that IPRA does not impose an obligation on public bodies to create records that do not otherwise exist. *Id.* Thus, Defendants argue that Plaintiff's allegations that Defendants have failed to produce records of phone conversations or other communications that were never recorded or preserved fail to state a violation of IPRA. *Id.*

---

[40] Exhibits 12a and 12b are identified on Plaintiff's Exhibit List as "Vista Grande 4th Grade Coach Johnson's Falsified Email To McDermott (2-18-25 at 1:48 pm)" and "Mike McDermott Ban Text to Plaintiff (2-17-25 at 11:47 a.m.). Doc. 6 at 22.

In Response, Plaintiff argues that Defendants' Motion relies on contested factual assertions outside the pleadings and ignores numerous factual allegations in the Complaint that must be accepted as true.[41]  Doc. 22 at 3.

In Reply, Defendants contend that Plaintiff's Response does not address or respond to the arguments and authorities in their Motion.  Doc. 44 at 6.  Defendants restate their arguments.  *Id.*

Under IPRA, every person, with limited exceptions, has a right to inspect public records of this state.  NMSA 1978, § 14-2-1.  Nothing in IPRA shall be construed to require a public body to create a public record.  NMSA 1978, § 14-2-8(B).  The term "public records" is defined as "all documents, papers, letters, books, maps, tapes, photographs, recordings and other materials, regardless of physical form or characteristics, that are used, created, received, maintained or held by or on behalf of any public body and relate to public business, whether or not the records are required by law to be created or maintained."  NMSA 1978, § 14-2-6(F).  The term "public body" means the executive, legislative and judicial branches of state and local governments and all advisory boards, commissions, committees, agencies or entities created by the constitution or any branch of government that receives any public funding, including political subdivisions, special taxing districts, school districts and institutions of higher education.  NMSA 1978, § 14-2-6(G).  Pursuant to Section 14-2-8(A), any person wishing to inspect public records may submit an oral or written request to the custodian and the procedures set forth in the section shall be in response to a written request.  The failure to respond to an oral request shall not subject the custodian to any penalty.  NMSA 1978, § 14-2-8(A).  Pursuant to Section 14-2-8(D), a records custodian who received a written request to inspect public records "shall permit the inspection immediately or as soon as is practicable under the circumstances, but not later than

---

[41] *See* fns. 2, 3, and 4, *supra.*

fifteen days after receiving a written request.  If the inspection is not permitted within three business days, the custodian shall explain in writing when the records will be available for inspection or when the public body will respond to the request."  A person may bring an action to enforce the provisions of IPRA if: (1) a custodian does not deliver or mail a written explanation of denial after receipt of a written request for inspection, § 14-2-11(C), or (2) a written request for public records has been denied, § 14-2-12(A)(2).  The designated records custodian is the only official who statutorily "is subject to an action to enforce" IPRA.  *Pacheco v. Hudson*, 415 P.3d 505, 516 (N.M. 2018) (citing NMSA 1978, §§ 14-2-7, 14-2-11(C)).

Plaintiff's Complaint fails to state a claim for relief.  Plaintiff's Complaint alleges, without more, that he submitted "lawful IPRA requests for league-related communications and records" and that documents responsive to his requests have been withheld.  Missing from Plaintiff's Complaint are factual allegations sufficient to support that Plaintiff submitted IPRA requests in writing, that they were submitted to the proper records custodian, that he sought public records created by a public body and identified them with reasonable particularity, whether the records custodian denied Plaintiff's request and provided a written explanation of the denial, or whether the records custodian failed to timely deliver or mail a written explanation of denial.  Also missing from Plaintiff's Complaint are factual allegations that identify what public records are allegedly responsive and are being withheld and/or whether the allegedly responsive and withheld public records even exist.  Instead Plaintiff's Complaint alleges, without more, that Defendant City of Rio Rancho continues to withhold documents responsive to his IPRA requests, that Defendant Peterson is violating IPRA pursuant to § 14-2-6(E)[42] by encouraging practices to avoid creating public records, and that Defendant McDermott, a private citizen, has IPRA

---

[42] Section 14-2-6(E) defines "person" as "any individual, corporation, partnership, firm, association or entity."

liability and is withholding communications about banning Plaintiff from the MAC, a family owned business in Rio Rancho, New Mexico.[43]  Even assuming as true that Plaintiff submitted "lawful IPRA requests," Plaintiff's Complaint fails to provide factual allegations sufficient to support that Defendants, with the actual duty to do so, failed to comply with their statutory obligations in responding to Plaintiff's IPRA requests.  Plaintiff's Complaint also fails to identify documents responsive to his IPRA requests that allegedly are being withheld and/or whether the allegedly withheld documents are in fact public documents created by a public body that exist.

The Court, therefore, finds Defendants' Motion is well taken and **GRANTED**. Plaintiff's Complaint against Defendants City of Rio Rancho for Violation of the New Mexico Inspection of Public Records Act (Count III) is **DISMISSED WITHOUT PREJUDICE**. Plaintiff's Complaint against Defendants Peterson and McDermott for Violation of the New Mexico Inspection of Public Records Act (Count III) is **DISMISSED WITH PREJUDICE**.[44] [45]

### 3.    Counts IV, V, VI, XII, XIII, and XIV - State Constitutional Violations Pursuant to NMCRA

Plaintiff's Complaint alleges six counts against Defendant City of Rio Rancho and Defendant RRPD pursuant to the NMCRA: Count IV – Violation of Free Speech; Count V -

---

[43] *See* fn. 9, *supra*.

[44] *See* fns. 6 and 8, *supra*.  The designated records custodian is the only official who statutorily "is subject to an action to enforce" IPRA.  *Pacheco v. Hudson*, 415 P.3d 505, 516 (N.M. 2018) (citing NMSA 1978, §§ 14-2-7, 14-2-11(C)). *See* https://rrnm.gov/1634/Public-Records-Requests (provides that the City Clerk of Rio Rancho is the Chief Records Custodian for Rio Rancho to whom a request to inspect public records may be submitted).  A court "is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006) (quotation omitted).

[45] Prior to removal, on August 22, 2025, Plaintiff filed a *Motion for Preliminary Hearing on Inspection of Public Records Act Violations*.  Doc. 6 at 119-124. *See In re Montgomery Mall Ltd. P'ship*, 704 F.2d 1173, 1176 (10th Cir. 1983) (string citation omitted) (explaining that it is well settled that "motions pending in state court survive removal to federal court.").  On September 8, Defendants filed a Response.  Doc. 14. On September 22, 2025, Plaintiff filed a Limited Response.  Doc. 21.  Because the Court finds that Plaintiff's Complaint fails to state a claim on this issue, Plaintiff's Motion for Preliminary Hearing is **DENIED AS MOOT**.

Retaliation for Protected Speech; Count VI - Conspiracy to Violate Plaintiff's Free Speech Rights; Count XII - Violation of Equal Protection on the Basis of Race; Count XIII - Violation of Equal Protection Based on Viewpoint; and Count XIV - Conspiracy to Violate Plaintiff's Equal Protection Rights.  Doc. 6 at 8-11, 14-16.

Defendants argue that Plaintiff's state Constitutional claims against Defendant City of Rio Rancho should be dismissed because New Mexico law is coextensive with federal law and that because Plaintiff has failed to plead well-pled allegations for violation of federal constitutional law, his claims asserted under the NMCRA should be dismissed for the precisely the same reasons.  Doc. 10 at 24-25.

Defendants argue that Defendant RRPD should be dismissed with prejudice for failure to state a claim.  Doc. 10 at 5-6.  Defendants argue that federal precedent is unambiguously clear that municipal departments and subdivisions cannot be sued separately from the municipality itself.  *Id.*  Defendants argue, therefore, that Plaintiff has sued RRPD in contravention of black-letter law.  *Id.*  Defendants argue that the Court should dismiss all of Plaintiff's claims in their entirety against the RRPD because it is a department within the City of Rio Rancho and has no separate legal identity or authority to prosecute or defend lawsuits and because the New Mexico Legislature has exclusively delegated that authority to the City.  *Id.*  Defendants argue that the NMCRA requires that a plaintiff must sue the relevant "public body," and that the RRPD does not meet the definition of a public body under New Mexico law.  *Id.* (citing cases).

In Response, Plaintiff argues that Defendants' Motion relies on contested factual assertions outside the pleadings and ignores numerous factual allegations in the Complaint that must be accepted as true.[46]  Doc. 22 at 3.

---

[46] *See* fns. 2, 3, and 4, *supra.*

In Reply, Defendants restate their arguments and add that Plaintiff makes no arguments and offers no authorities to the contrary.  Doc. 44.

The NMCRA was enacted by the New Mexico state legislature in 2021 and provides a cause of action to persons who "have suffered a deprivation of any rights, privileges or immunities pursuant to the bill of rights of the constitution of New Mexico due to acts or omissions of a public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body." NMSA 1978 §§ 41-4A-3B.  "Claims brought pursuant to the New Mexico Civil Rights Act [must] be brought exclusively against a public body."  *Way v. Probation*, 2024 WL 1240540 at *2 (D.N.M. Mar. 21, 2024) (quoting NMSA 1978 § 41-4A-3(C)).  "As used in the New Mexico Civil Rights Act, 'public body' means a state or local government, an advisory board, a commission, an agency, or an entity created by the constitution of New Mexico or any branch of government that receives public funding...." *Id.* (quoting NMSA 1978 § 41-4A-2).

### a.    Defendant City of Rio Rancho

Plaintiff's Complaint alleges the same set of facts for the state law constitutional violations pursuant to NMCRA against Defendant City of Rio Rancho as he does for the federal Constitutional claims against the state actor and private Defendants pursuant to 42 U.S.C. § 1983.  The Court concludes Plaintiff has not stated any NMCRA claims against Defendant City of Rio Rancho for the same reasons he has not stated any federal Constitutional claims against the state actor Defendants and private Defendants.  The Supreme Court of New Mexico previously has interpreted the New Mexico Constitution's provisions more expansively than the Supreme Court of the United States has interpreted the United States Constitution.  *See State v. Nunez*, 2000-NMSC-013, ¶ 13 ("it is settled law in New Mexico that '[w]e are not bound to give

46

the same meaning to the New Mexico Constitution as the United States Supreme Court placed

upon the United States Constitution, even in construing provisions having wording that is

identical, or substantially so [. . .]." (ellipses added)).  The Court concludes from its independent

analysis, however, that the Supreme Court of New Mexico would find that Plaintiff has not

stated any NMCRA claims under the New Mexico Constitution's analogues on Fourteenth

Amendment Due Process and Equal Protection, N.M. Const. Art. II, § 18, and First Amendment

Free Speech, N.M. Const. Art. II, § 17.

The Court, therefore, finds Defendants' Motion on is well taken and **GRANTED**.

Plaintiff's Complaint against Defendants City of Rio Rancho for state Constitutional violations

of free speech and equal protection in Counts IV, V, VI, XII, XIII, and XIV is **DISMISSED**

**WITH PREJUDICE**.

### b.      Defendant RRPD

Here there are no factual allegations showing that Defendant RRPD is a suable entity

pursuant to the NMCRA.  To the contrary, it is a department created by the City of Rio Rancho

pursuant to the City's legislative authority to do so.[47]  *See* NMSA 1978, § 3-18-1(G) (describing

a municipality as a "body politic and corporate under the name and form of government selected

by its qualified electors" and having the corporate power to "preserve peace and order within the

municipality.").  Because administrative departments of municipalities—such as law

enforcement agencies—lack legal identities apart from the municipality itself, they are not suable

---

[47] *See also* https://sharenm.org/rio-rancho/rio-rancho-municipal-police-department (describing the police department in Rio Rancho as a division of the department of public safety, which includes law enforcement, animal control, traffic safety, fire suppression, and emergency medical care); *see also* https://rrnm.gov/17/Police (the Official Site for the City of Rio Rancho identifying the police as a department under the umbrella of City government).  A court "is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006) (quotation omitted).

entities, and claims against them are subject to dismissal. *See generally Kleinbrook v. Rio Rancho Police Dept.,* 2024 WL 4215962, at *2 (D.N.M. Sept. 17, 2024) ("Generally, governmental sub-units are not separate suable entities that may be sued under § 1983.") (citing *Hinton v. Dennis*, 362 F. App'x 904, 907 (10th Cir. 2010) (*citing Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985) (holding that City and County of Denver would remain as a defendant and dismissing complaint as to the City of Denver Police Department because it is not a separate suable entity))).

In sum, because Defendant RRPD does not meet the definition of a public body as defined in the NMRCA, dismissal is appropriate. The Court, therefore, finds Defendants' Motion is well taken and **GRANTED**. All state Constitutional claims in Plaintiff's Complaint against Defendant RRPD found in Counts IV, V, VI, XII, XIII and XIV are **DISMISSED WITH PREJUDICE**.

### 4.    Count XI – Civil Conspiracy to Violate Free Speech Rights

Plaintiff's Complaint alleges in Count XI that "Defendants 4-11 (in their individual capacities)" and "Defendants 12-21 (private actors)" were part of a "joint conspiracy under color of state law to violate Plaintiff's constitutional speech rights under Article II, § 17" of the New Mexico Constitution. Doc. 6 at 14, ¶¶ 521-23. Plaintiff incorporates by reference the same factual allegations presented with respect to his federal Constitutional claims against "Defendants 4-11" and "Defendants 12-21."

In order to prevail on a claim for civil conspiracy, a plaintiff is required to show that: (1) a conspiracy existed between two or more individuals; (2) pursuant to the conspiracy, the defendants carried out specific wrongful acts; and (3) the plaintiff was damaged as a result of these acts. *Cain v. Champion Window Co. of Albuquerque, LLC*, 2007-NMCA-085, ¶ 28 (N.M.

App. 2007).  However, the tort of civil conspiracy does not provide an independent basis for liability; instead, it requires the plaintiff to establish "an independent unlawful act—*i.e.* "something that would give rise to a civil action on its own." *Id.*  In this case, Plaintiff's civil conspiracy claim is tied to his violation of free speech rights.

Plaintiff's Complaint fails to allege facts specific as to any of these Defendants that allows the court to draw a reasonable inference that they are liable for the misconduct alleged. *Twombly,* 550 U.S. at 570; *Iqbal,* 556 U.S. at 678.  Additionally, the Court has addressed Plaintiff's free speech conspiracy claims against these Defendants pursuant to § 1983 and concluded the state actor Defendants are entitled to qualified immunity as to those claims and that Plaintiff's Complaint fails to allege facts to support joint action by the private Defendants. *See* Section IV.B.1. and IV.B.2., *supra*.

The Court, therefore, finds Defendants' Motion is well taken and **DISMISSES WITH PREJUDICE** Count XI as against Defendants 4-11 and 12-20.  *Cain*, 2007-NMCA-085, ¶ 28 (holding that the plaintiff's civil conspiracy claim failed because the underlying claim to which it was tied was not actionable).

### 5.    Count XVII – Malicious Abuse of Process

Plaintiff's Complaint alleges in Count XVII that Defendant City of Rio Rancho through its officials initiated and used criminal process and exclusionary administrative actions against Plaintiff for purposes that were not proper in the regular course of proceedings and were motivated by retaliation against Plaintiff's protected expression and public criticism.  Doc. 6 at 17-18.  Plaintiff brings this claim pursuant to the NMTCA.  *Id.*  Plaintiff alleges that the City of Rio Rancho is not immune from liability for torts committed by its law enforcement officers and public employees pursuant to NMSA 1978, § 41-4-12.  *Id.*  Plaintiff incorporates by reference the

49

same factual allegations presented with respect to his state Constitutional violation claims against Defendant City of Rio Rancho and Defendant RRPD found in Count IV.

Defendants argue that Plaintiff has failed to state a valid malicious abuse of process claim. Doc. 10 at 25-26. Defendants argue that Plaintiff's Complaint fails to plead any facts to suggest Defendants did not have probable cause in undertaking their investigation into Plaintiff's conduct. *Id.* Defendants further argue that allegations that an investigation allegedly targeted Plaintiff, without more, do not plausibly state the investigation into Plaintiff was initiated absent probable cause. *Id.*

In Response, Plaintiff argues that Defendants' Motion relies on contested factual assertions outside the pleadings and ignores numerous factual allegations in the Complaint that must be accepted as true.[48] Doc. 22 at 3.

In Reply, Defendants restate their arguments and add that Plaintiff makes no arguments and offers no authorities to the contrary. Doc. 44.

The NMTCA is the "exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act . . . ." NMSA 1978, § 41-4-17(A). A governmental entity of New Mexico may not be sued unless the plaintiff's cause of action fits within one of the exceptions to governmental entities' and public employee's immunity in the NMTCA. *See Begay v. State*, 1095-NMCA-117, ¶ 8 (N.M. App. 1985), *rev'd on other grounds* by *Smialek v. Begay*, 104 N.M. 375 (1986). A tort for which immunity has not been expressly waived in the NMTCA is not actionable against the state, a state entity, or their employees. *Davis v. Bd. of Cty. Commr's of Dona Ana Cty.*, 1999-NMCA-110, ¶ 32 (N.M. App.

---

[48] *See* fns. 2, 3, and 4, *supra.*

1999).  Immunity from liability has been waived for conduct by "law enforcement officers while acting within the scope of their duties." *See* NMSA 1978 § 41-4-12.

A plaintiff may not, however, sue a governmental entity without providing the required timely notice. Under the NMTCA:

> A. Every person who claims damages from the state or any local public body under the Tort Claims Act shall cause to be presented to the risk management division for claims against the state, the mayor of the municipality for claims against the municipality ... within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a *written* notice stating the time, place and circumstances of the loss or injury.

> B. No suit or action for which immunity has been waived under the Tort Claims Act shall be maintained and no court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given as required by this section, *or* unless the governmental entity had actual notice of the occurrence ...

N.M. Stat. § 41-4-16A, B (1978) (emphasis added). This notice requirement does not apply when the suit is against a public employee.  *See Dutton v. McKinley County Bd. of Comm'rs.*, 1991-NMCA-130, ¶ 12 (N.M. App. 1991).

New Mexico has combined the torts of abuse of process and malicious prosecution into a single tort: malicious abuse of process.  *See DeVaney v. Thriftway Marketing Corp.*, 1998-NMSC-001, ¶ 17 (1997).  The elements of a malicious-abuse-of-process action are: (i) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (ii) a primary motive in the use of process to accomplish an illegitimate end; and (iii) damages.  *See Durham v. Guest,* 2009-NMSC-007, ¶ 29 (2009).  An improper use of process may be shown by: (i) filing a complaint without probable cause; or (ii) an irregularity or impropriety suggesting extortion, delay or harassment, or other conduct formerly actionable under the tort of abuse of process.  *Id.*

51

Plaintiff's Complaint fails to allege specific facts that allows the court to draw a reasonable inference that Defendant City of Rio Rancho is liable for the misconduct alleged. *Twombly,* 550 U.S. at 570; *Iqbal,* 556 U.S. at 678.  Additionally, the Court addressed Plaintiff's state Constitutional violations against Defendant City of Rio Rancho pursuant to the NMCRA, claims which form the basis of Plaintiff's malicious abuse of process claim, and determined that Plaintiff has failed to state a claim.  That aside, because Plaintiff's Complaint brings this tort claim against Defendant City of Rio Rancho, Plaintiff's Complaint fails to allege that Plaintiff complied with the 90-day notice requirement when suing a governmental entity pursuant to the NMTCA.

The Court, therefore, finds Defendants' Motion is well taken and **DISMISSES WITHOUT PREJUDICE** Count XVII as against Defendant City of Rio Rancho for failure to state a claim.

### 6.        <u>Count XVIII – Intentional Infliction of Emotional Distress</u>

In Count XVIII, Plaintiff incorporates by reference the same factual allegations presented with respect to his federal Constitutional claims against "Defendants 4-11 (in their individual capacities) and "Defendants 12-21 (private actors)."  Doc. 6 at 18.  Plaintiff alleges that Defendants intentionally targeted him by making derogatory and knowingly false accusations and maliciously engaging in behavior designed to harm Plaintiff's reputation and emotional well-being.  Doc. 6 at 18.  Plaintiff alleges Defendants' actions were deliberate, extreme, and outrageous, and caused Plaintiff severe emotional distress.  *Id.*

Defendants argue that Plaintiff ties his claims here to the state Constitutional violations in Count IV of his Complaint against Defendant City of Rio Rancho and Defendant RRPD and fails to posit sufficient allegations for the Court to conclude that claims here were brought against any

of these Defendants in their individual capacities. Doc. 10 at 26-27. Defendants argue, therefore, that Plaintiff's allegations in Count XVIII are governed by the terms of the NMTCA for which sovereign immunity has not been waived. *Id.*

In Response, Plaintiff argues that Defendants' Motion relies on contested factual assertions outside the pleadings and ignores numerous factual allegations in the Complaint that must be accepted as true.[49] Doc. 22 at 3.

In Reply, Defendants restate their arguments and add that Plaintiff makes no arguments and offers no authorities to the contrary. Doc. 44.

To state a claim for intentional infliction of emotional distress under New Mexico law, a Plaintiff must show "(1) the defendant's conduct was extreme and outrageous; (2) the defendant's conduct was intentional or in reckless disregard of the effects on the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the plaintiff's distress." *Hartwell v. Sw. Cheese Co., LLC*, 276 F. Supp. 3d 1188, 1213-14 (D.N.M. 2016) (citation omitted).

Under the NMTCA, a governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the NMTCA. N.M. Stat. Ann. 1978 § 41-4-4(A); *Garcia-Montoya v. State of New Mexico*, 2001-NMSC-003, ¶ 49 (2001). The waivers of immunity under the NMTCA are limited to (1) negligent operation of maintenance of any motor vehicle, aircraft or watercraft; (2) negligent operation or maintenance of any building, public park, machinery, equipment or furnishings; (3) negligent operation of airports; (4) negligent operation of public utilities and services; (5) negligent operation of medical facilities; (6) negligent provision of health care services; (7)

---

[49] *See* fns. 2, 3, and 4, *supra.*

negligence during the construction or maintenance of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area; and (8) certain actions by law enforcement officers. *See* N.M. Stat. Ann. 1978 §§ 41-4-5 through 41-4-12.

### a.    State Actor Defendants 4-11

The Court agrees that as to the state actor Defendants, the tort claim of intentional infliction of emotional distress as alleged in Count XVIII against them, though brought in their "individual capacities," are governed by the NMTCA because Plaintiff's Complaint fails to allege that they were not acting within the scope of their duties.  *See* NMSA 1978, § 41–4–2(A) (1976) (stating, as a matter of public policy, "that governmental entities and public employees shall only be liable within the limitations of the [NMTCA] ... and in accordance with the principles established in that act"); *see also Curry v. Gonzales*, 2021 WL 4430264, at 2 (D.N.M. Sept. 27, 2021) (explaining that the New Mexico Court of Appeals has stated that the terms "official capacity" and "individual capacity" are "inappropriate" in action alleging tort claims against public employees under the NMTCA) (citing *Vigil v. State Auditor's Off.,* 116 P.3d 854, 858 (N.M. Ct. App. 2005) (explaining that NMTCA applies to public employees acting within the scope of their duties))).  Here, Plaintiff's Complaint identifies and refers to the state actor Defendants only in their capacities as public employees.  Doc. 6 at 2.

Plaintiff's Complaint does not allege any facts that would bring his claim for intentional infliction of emotional distress within one of the waivers of sovereign immunity enumerated in the NMTCA.  Moreover, the New Mexico Supreme Court has specifically held that there is no waiver in the NMTCA for claims of intentional infliction of emotional distress. *See Garcia-Montoya*, 2001-NMSC-003, ¶ 49.  Therefore, to the extent Plaintiff seeks to bring this tort claim

against the state actor Defendants for their acts within the scope of their duties as public employees, Plaintiff's claims are barred by sovereign immunity.

**b.**     **<u>Private Defendants 12-20</u>**

The Court finds that Plaintiff's Complaint on its face fails to state a claim against any of the private Defendants.  Here, Plaintiff's allegations are nothing more than a formulaic recitation of the elements of a cause of action.  This is insufficient for stating a claim for relief.  *Iqbal,* 556 U.S. at 678.  Plaintiff's Complaint fails to allege specific facts as to any of the private Defendants and instead refers to them only as "Defendants 14-21."  This is also insufficient for stating a claim for relief.  *Id.*  Additionally, Plaintiff's Complaint fails to allege facts sufficient to support that any of the private Defendants engaged in conduct that amounted to harassing, extreme, or outrageous behavior.  *See Silverman v. Progressive Broadcasting, Inc.,* 1998– NMCA–107, ¶ 32 (N.M. App. 1998) ("Extreme and outrageous conduct is described as conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.") (internal quotations omitted); *see also Allin v. Schuchmann,* 886 F. Supp. 793, 799–800 (D. Kan. 1995) (testifying falsely in criminal case is not so extreme and outrageous to allow claim for intentional infliction of emotional distress).

The Court, therefore, finds Defendants' Motion is well taken and **DISMISSES WITH PREJUDICE** Count XVIII as against state actor Defendants 4-11 as barred by sovereign immunity and **DISMISSES WITHOUT PREJUDICE** private Defendants 12-20 for failure to state a claim.

55

### 7.   Count XIX – Defamation

In Count XIX, Plaintiff incorporates by reference the same factual allegations presented with respect to his § 1983 free speech violation claims against "Defendants 4-11 (in their individual capacities) and "Defendants 12-21 (private actors)." Doc. 6 at 18-19.  Plaintiff alleges that Defendants made false statements that were published with knowledge of their falsity or with reckless disregard for the truth.  *Id.*  Plaintiff alleges that Defendants were aware that their accusations were false and intended to damage Plaintiff's reputation, intimidate him, and retaliate against him for speaking out about the discriminatory practices in the youth basketball league.  *Id.*  Plaintiff alleges that he has suffered harm, including emotional distress, damage to his reputation, and loss of personal and professional standing in this community.  *Id.*

Defendants argue that Plaintiff has not presented any evidence that alleged defamatory statements*, i.e.,* email and text communications, were made available to the public and, therefore, were published.  Doc. 10 at 27-28.  Defendants also argue that Plaintiff has not presented any evidence that these communications were published by any of the Defendants to a third party. *Id.*  Defendants further argue that even if the communications were false and could be construed as defamatory, Plaintiff's Complaint fails to show the communications caused actual injury.  *Id.*

In Response, Plaintiff argues that Defendants' Motion relies on contested factual assertions outside the pleadings and ignores numerous factual allegations in the Complaint that must be accepted as true.[50]  Doc. 22 at 3.

In Reply, Defendants restate their arguments and add that Plaintiff makes no arguments and offers no authorities to the contrary.  Doc. 44.

---

[50] *See* fns. 2, 3, and 4, *supra.*

To establish the claim of defamation on the part of defendant, the plaintiff has the burden of proving each of the following contentions: (1) the defendant published the communication; and (2) the communication contains a statement of fact; and (3) the communication was concerning the plaintiff; and (4) the statement of fact was false; and (5) the communication was defamatory; and (6) the person[s] receiving the communication understood it to be defamatory; and (7) the defendant [knew that the communication was false or negligently failed to recognize that it was false] [or] [acted with malice]; and (8) the communication caused actual injury to the plaintiff's reputation; and (9) the defendant abused [its] privilege to publish the communication. UJI 13-1002(B) NMRA.  A defamation pleading is sufficient to survive a motion to dismiss if a plaintiff pleads sufficient factual matter to state a claim for relief that is plausible on its face in either direct or inferential relation to each element of the defamation claim.  *Choq, LLC v. Holistic Healing*, LLC, 2020 WL 8175553, at *4 (D. Wyo. July 28, 2020).

### a.    <u>State Actor Defendants 4-11</u>

The Court similarly finds that Plaintiff's claims against the state actor Defendants for the tort of defamation is governed by the NMTCA.  Thus, with the exception of Defendant Samuel, a Rio Rancho police officer, Plaintiff's Complaint does not allege any facts that would bring his claim for defamation against the state actor Defendants within one of the waivers of sovereign immunity enumerated in the NMTCA.  *See* N.M. Stat. Ann. 1978 §§ 41-4-5 through 41-4-12; *see also Salazar v. City of Albuquerque*, 776 F. Supp. 2d 1217, 1243 (D.N.M. 2011) (explaining that the NMTCA waives immunity for defamation claims against law enforcement officers).  That said, Plaintiff's Complaint fails to allege any facts to support that Defendant Samuel engaged in defamatory conduct.  Specifically as to Defendant Samuel, Plaintiff's Complaint alleges, without more, that he attended a meeting with Defendants Peterson and Trujillo, that he conducted a

57

sham criminal investigation and trespass, and that he cleared Plaintiff of any wrongdoing. Doc. 6 at 8-9, ¶¶ 300-01, 305-06, 314-15, 333-34. This is insufficient to state a claim for relief that is plausible on its face in either direct or inferential relation to each element of the defamation claim.

Therefore, to the extent Plaintiff seeks to bring this tort claim against the state actor Defendants Peterson, Green, Trujillo, Maez, Lury, Geisel and Rubin for acts within the scope of their duties as public employees, Plaintiff's claims are barred by sovereign immunity. Additionally Plaintiff's Complaint does not allege any facts to support that state actor Defendant Samuel engaged in defamatory conduct.

### b.      Private Defendants 12-20

As to the private Defendants, Plaintiff's allegations are nothing more than a formulaic recitation of the elements of a cause of action. This is insufficient for stating a claim for relief. *Iqbal,* 556 U.S. at 678. Additionally, Plaintiff's Complaint fails to allege facts specific to any of the private Defendants. This is also insufficient for stating a claim for relief. *Id.* Here, Plaintiff's Complaint broadly alleges, without more, that "Defendants 14-21 coordinated a vicious campaign with the City of Rancho defendants to knowingly submit false complaints alleging Plaintiff of committing race based hate crimes which were later disproved by defendant Samuel's police report"; that Defendants 13 coordinated with . . . Defendant 12 to make knowingly false race hate crimes against Plaintiff; and that texts were solicited from "private defendants 13-21." Doc. 6 at 10, ¶¶ 356-59, 362-63. Plaintiff's conclusory allegations fail to plead sufficient factual matter to state a claim for relief that is plausible on its face in either direct or inferential relation to each element of the defamation claim.

The Court, therefore, finds Defendants' Motion is well taken and **DISMISSES WITH PREJUDICE** Count XIX as against state actor Defendants Peterson, Green, Trujillo, Maez, Lury, Geisel and Rubin as barred by sovereign immunity and **DISMISSES WITHOUT PREJUDICE** state actor Defendant Samuel and private Defendants 12-20 for failure to state a claim.

### D.    Fed. R. Civ. P. 15(a)

"Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson County Sch. Dist. v. Moody's Investor's Services*, 175 F.3d 848, 859 (10th Cir.1999), *quoted in Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004).

Plaintiff has not sought leave of the Court to amend his Complaint.  The Court, however, having dismissed certain state law claims without prejudice, nonetheless finds that granting leave to amend would be futile.  *See Hall*, 935 F.2d at 1109-10 ("Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a court may dismiss *sua sponte* when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.") (internal quotation marks omitted).  Here, certain of Plaintiff's claims have been dismissed without prejudice for his failure to exhaust administrative remedies and/or comply with notice requirements.  Additionally, Plaintiff's state law tort claims, apart from being void of sufficient factual allegations, are premised on or flow from Plaintiff's alleged federal and state Constitutional violations which the Court has dismissed with prejudice.  For this reason, it

59

appears to the Court beyond all doubt that the plaintiff can prove no set of facts in support of those state law claims dismissed without prejudice which would entitle him to relief.

## V.  CONCLUSION

For the foregoing reasons, the Court finds that Defendants City of Rio Rancho, Rio Rancho Police Department, Matt Geisel, Josh Rubin, Connie Peterson, Lawrence Samuel, Lorenzo Green, Noah Trujillo, Brandon Maez, Elliana Lury, Theresa Smith, Stephen Smith, Torenzo Johnson, Bianca Fisher, Michael Fisher, Melissa Montoya, Ana Kuny Slock, Raquel DeTomasso, and Michael McDermott's Opposed Motion to Dismiss the Complaint and Qualified Immunity is well taken and is **GRANTED** as follows:

**IT IS THEREFORE ORDERED** that Defendants' Motion for dismissal of claims against Defendants Peterson, Green, Trujillo, Maez, Lury, Geisel, Rubin, and Samuel in their official capacities is well taken and is **GRANTED**;[51]

**IT IS FURTHER ORDERED** that Count VII – Violation of Free Speech Rights, Count VIII – Retaliation for Protected Speech, Count IX – Conspiracy to Violate Plaintiff's Free Speech Rights, and Count XV – Violation of Equal Protection on the Basis of Race, all pursuant to 42 U.S.C. § 1983, as against Defendants Peterson, Green, Trujillo, Maez, Lury, Geisel, Rubin, Samuel, McDermott, Johnson, Stephen Smith, Theresa Smith, Montoya, Slock, DeTomasso, Bianca Fisher, and Michael Fisher are **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Count X – Free Speech Retaliation (Monell Claim) pursuant to 42 U.S.C. § 1983 against Defendant City of Rio Rancho is **DISMISSED WITH PREJUDICE**.

---

[51] *See* fn. 13, *supra*.

60

**IT IS FURTHER ORDERED** that Count II – Disparate Impact Discrimination and Count XVI – Public Accommodation Discrimination, both pursuant to the NMHRA, against Defendants City of Rio Rancho and RRPD are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

**IT IS FURTHER ORDERED** that Count III – Violation of New Mexico IPRA against Defendant City of Rio Rancho is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim and against Defendant Connie Peterson and Mike McDermott is **DISMISSED WITH PREJUDICE** for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Hearing on Inspection of Public Records Act Violations is **DENIED AS MOOT**.[52]

**IT IS FURTHER ORDERED** that Count IV – Violation of Free Speech, Count V – Retaliation for Protected Speech, Count VI – Conspiracy to Violate Plaintiff's Free Speech Rights, Count XII – Violation of Equal Protection on the Basis of Race, Count XIII – Violation of Equal Protection Based on Viewpoint, and Count XIV – Conspiracy to Violate Plaintiff's Equal Protection Rights, all pursuant to the NMCRA, against Defendant City of Rio Rancho and Defendant RRPD are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Count XI – Civil Conspiracy to Violate Plaintiff's Free  Speech Rights (Common Law Civil Conspiracy) against Defendants Peterson, Green, Trujillo, Maez, Lury, Geisel, Rubin, Samuel, McDermott, Johnson, Stephen Smith, Theresa Smith, Montoya, Slock, DeTomasso, Bianca Fisher, and Michael Fisher is **DISMISSED WITH PREJUDICE** for failure to state a claim;

---

[52] *See* fn. 45, *supra*.

**IT IS FURTHER ORDERED** that Count XVII – Malicious Abuse of Process against Defendant City of Rio Rancho pursuant to the NMTCA is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim;

**IT IS FURTHER ORDERED** that Count XVIII – Intentional Infliction of Emotional Distress against state actor Defendants Peterson, Green, Trujillo, Maez, Lury, Geisel, Rubin, and Samuel is **DISMISSED WITH PREJUDICE** as barred by sovereign immunity and against private Defendants McDermott, Johnson, Stephen Smith, Theresa Smith, Montoya, Slock, DeTomasso, Bianca Fisher, and Michael Fisher is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

**IT IS FURTHER ORDERED** that Count XIX – Defamation against state actor Defendants Peterson, Green, Trujillo, Maez, Lury, Geisel, and Rubin is **DISMISSED WITH PREJUDICE** as barred by sovereign immunity and against state actor Defendant Samuel and private Defendants McDermott, Johnson, Stephen Smith, Theresa Smith, Montoya, Slock, DeTomasso, Bianca Fisher, and Michael Fisher is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

**IT IS SO ORDERED.**

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**